STATE of Iowa, Appellee,

v.

Melvin Haywood LEWIS, Appellant.

No. 02–1105.

Supreme Court of Iowa.

Feb. 25, 2004.

Linda Del Gallo, State Appellate Defender, and Martha J. Lucey, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, John P. Sarcone, County Attorney, and Gary Kendell, Assistant County Attorney, for appellee.

WIGGINS, Justice.

This appeal involves a decision by the district court overruling Melvin Lewis's motion to suppress evidence obtained through a warrantless search of his fenced backyard and enclosed rear porch. At trial, Lewis was found guilty of the charge of possession of marijuana in violation of Iowa Code section 124.401(5) (1999). On appeal, he challenges the trial court's suppression ruling as well as the court's imposition of a $125 law enforcement initiative surcharge, which Lewis claims is a violation of the ex post facto clauses of the federal and state constitutions. We conclude the district court should have granted Lewis's motion to suppress. The police cannot rely on reasonable suspicion or hot pursuit as the basis for a warrantless entry into Lewis's fenced backyard. Thus, we reverse and remand for a new trial.

## I. Background Facts and Proceedings.

As part of its crime prevention program, the Des Moines Police Department obtained form letters from property owners in high crime areas, which read as follows:

Dear Chief Moulder:

We have considerable concern about the illegal activities in our neighborhood. We are especially concerned about the loitering and trespassing on our properties in this area. Various events which have occurred in the neighborhood are infringing upon the rights of area residents.

This letter is to authorize you to arrest anyone who is illegally on the property I own/manage located at:

The following is a listing of my tenants:

Name Address & Apt. No.

**Melvin Lewis 1600 Forest
 Des Moines, IA** [1]

I will advise you of any change in tenants of my property. If needed, you can contact me at phone numbers listed below. Thank you for your assistance.

Sincerely,

Owner's Signature

This property is located in Officer Michael Coughlin's regular patrol area. Prior to July 24, 2000, Officer Coughlin contacted the tenant, Lewis, and discussed the no-trespass letter with him.

On July 24, 2000, at around 9:30 p.m., Officer Coughlin was on routine patrol in the area. From his vehicle, he observed several people in the fenced backyard and on the enclosed porch located inside the fence at the rear of the property. The fenced backyard and enclosed rear porch were clearly visible from the street. A gated fence completely enclosed the backyard. Officer Coughlin did not see Lewis on the premises.

Officer Coughlin knew the department had a no-trespass letter on file regarding this property. Officer Coughlin determined the no-trespass letter was current and decided to investigate. As Officer Coughlin and his partner pulled their marked squad car into Lewis's driveway, the officers noticed two individuals standing inside the gate of the fenced backyard start "rapidly walking" towards the enclosed rear porch where there was a large group of people. Officer Coughlin exited his vehicle and told the two individuals: "Stop, police." There is no indication as to whether these two individuals heard Officer Coughlin's command, but it is clear they did not acknowledge it. They continued to proceed to the enclosed rear porch. As these two individuals attempted to enter the enclosed rear porch, Officer Coughlin shouted, "no," entered the fenced backyard, and ran to the enclosed rear porch. The two individuals attempted to enter the enclosed rear porch's door, where Officer Coughlin could smell the odor of recently smoked marijuana.

Officer Coughlin ordered everyone off the enclosed rear porch, because he and his partner were outnumbered. He felt it was necessary for the officers' safety to handcuff and pat down the individuals he ordered off the enclosed rear porch. All but two individuals followed Officer Coughlin's commands to step down from the enclosed rear porch. The two individuals remaining on the enclosed rear porch were the tenant, Lewis, and his female companion. Lewis and his companion were not the two individuals who Officer Coughlin saw earlier walking towards the enclosed rear porch.

As Officer Coughlin and his partner were in the process of handcuffing the persons and patting them down, Sergeant Moran appeared at the scene. Sergeant Moran noticed that two individuals were still on the enclosed rear porch. An officer at the scene informed Sergeant Moran it was the tenant and his female companion. Sergeant Moran then inquired whether anyone had checked Lewis and his female companion for weapons. An officer on the scene answered in the negative. Sergeant Moran proceeded to enter the enclosed rear porch to check for weapons. He asked Lewis to stand. When Lewis stood, Sergeant Moran saw a bag of what he believed to be marijuana between Lewis's feet. He immediately placed Lew-

---

1. The owner of the residence handwrote the information in bold type.

is in handcuffs. Sergeant Moran searched the rest of the enclosed rear porch. He saw a paper bag on the east end of the enclosed rear porch. He opened the bag and found several bags of marijuana and a gun. The officers took Lewis into custody, and the State charged him with possession of marijuana with intent to deliver while having immediate control of a firearm in violation of Iowa Code sections 124.401(1)(*d*) and 124.401(1)(*e*) and failure to affix a drug tax stamp in violation of Iowa Code sections 453B.3 and 453B.12.

Lewis filed a motion to suppress claiming the entrance onto his property violated his rights under the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution. The district court concluded the officers acted reasonably in attempting to ascertain whether the individuals on the property had permission to be there. It further concluded when two of the individuals attempted to evade the officers, Officer Coughlin acted reasonably in entering the fenced backyard and following these individuals to the enclosed rear porch. Because the officer smelled recently smoked marijuana coming from the enclosed rear porch, exigent circumstances existed justifying the decision to secure the persons in the area of the enclosed rear porch, to enter the enclosed rear porch, and to check the individuals on the enclosed rear porch for weapons. For these reasons, the district court overruled the motion to suppress.

At trial, the jury only convicted Lewis of the lesser included offense of possession of marijuana. The district court granted Lewis a deferred judgment and placed him on informal probation. Lewis failed to sign up for informal probation, and the district court placed him on formal probation. When Lewis violated formal probation by testing positive for drugs on two separate occasions, the district court issued a warrant for his arrest. The district court revoked Lewis's deferred judgment and sentenced him to sixty days in the county jail. Additionally, the district court ordered Lewis to pay a fine of $250, a $5 DARE surcharge, and a $125 law enforcement initiative surcharge. The district court also ordered the Department of Transportation to revoke Lewis's driving privileges. Lewis appeals.

## II. Scope of Review.

This appeal involves constitutional issues. Therefore, the court's review is de novo. *State v. Reinier*, 628 N.W.2d 460, 464 (Iowa 2001). The court makes an "independent evaluation of the totality of the circumstances as shown by the entire record." *State v. Turner*, 630 N.W.2d 601, 606 (Iowa 2001). "We give deference to the district court's fact findings due to its opportunity to assess the credibility of witnesses, but we are not bound by those findings." *Id.*

## III. Issues.

Lewis raises two issues on appeal: (1) whether the search of Lewis's property and seizure of the evidence by the officers violated the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution; and (2) whether the imposition of the $125 law enforcement initiative surcharge violated the ex post facto clauses of the federal and state constitutions. The State claims Lewis failed to preserve error by not challenging the intrusion onto the curtilage.

## IV. Preservation of Error.

█ It has long been the position of this court that we will not decide a case based on a ground not raised by a party in the district court. *Kriv v. Northwestern Sec. Co.*, 237 Iowa 1189, 1195, 24 N.W.2d 751, 754 (1946). This rule applies to constitutional issues raised for the first time on

appeal. *State v. McCright,* 569 N.W.2d 605, 607 (Iowa 1997). Error preservation is based on principles of fairness. *DeVoss v. State,* 648 N.W.2d 56, 60 (Iowa 2002). It is unfair for us to consider an issue that the parties did not give the trial court an opportunity to consider. *Id.*

■ Based on the motion, resistance, and briefs filed, the district court framed the issues raised as follows:

> The defendant argues that the police officers *had no legal right to enter upon the backyard of the property,* to detain any of the persons on the property or to conduct any search of the persons located there or of the back porch. He urges that the "trespass letter" is of no legal consequence, and gives the police no authority beyond traditional legal principles. Defendant concludes that the contraband found by the police was the result of an illegal search and must be suppressed.

(Emphasis added.)

It is apparent the district court considered Lewis's challenge to the intrusion onto the curtilage. The issue is properly before us.

## V. General Legal Principles.

■ The Fourth Amendment to the United States Constitution assures "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment protects persons from unreasonable intrusions by the government upon a person's legitimate expectation of privacy. *State v. Legg,* 633 N.W.2d 763, 766–67 (Iowa 2001). This protection includes unreasonable intrusions by law enforcement officers. *State v. Loyd,* 530 N.W.2d 708, 711 (Iowa 1995). Subject to a few carefully drawn exceptions, warrantless searches and seizures are per se un-

reasonable. *Legg,* 633 N.W.2d at 767. The State has the burden to prove by a preponderance of the evidence that a recognized exception to the warrant requirement applies. *State v. Cadotte,* 542 N.W.2d 834, 836 (Iowa 1996), *abrogated on other grounds by State v. Turner,* 630 N.W.2d 601 (Iowa 2001). Exceptions recognized by this court are searches based on consent, plain view, probable cause coupled with exigent circumstances, searches incident to arrest, and those based on the emergency aid exception. *State v. Carlson,* 548 N.W.2d 138, 141 (Iowa 1996); *Cadotte,* 542 N.W.2d at 836.

■ We have adopted a two-step approach to determine whether a Fourth Amendment violation has occurred. The first step is to determine whether the person challenging the search had a legitimate expectation of privacy in the location searched. *Legg,* 633 N.W.2d at 767. If the expectation of privacy exists, we then "consider whether the State unreasonably invaded that protected interest." *State v. Breuer,* 577 N.W.2d 41, 45 (Iowa 1998). We base our assessment of a law enforcement officer's conduct on an objective standard. *State v. Hofmann,* 537 N.W.2d 767, 770 (Iowa 1995). The legality of the search does not depend on the actual motivations of the law enforcement officers involved in the search. *State v. Heminover,* 619 N.W.2d 353, 361 (Iowa 2000).

Lewis also asserts the State violated article 1, section 8 of the Iowa Constitution, which also protects persons against unreasonable searches and seizures. Our court has consistently construed Iowa's prohibition against unreasonable searches and seizures as having the same scope and purpose as the Fourth Amendment. *State v. Showalter,* 427 N.W.2d 166, 168 (Iowa 1988). Lewis has not given us reason to do otherwise, thus our discussion of the Fourth Amendment is equally applicable

to his Iowa constitutional claim. *See Legg,* 633 N.W.2d at 765 n. 1.

## VI. Legitimate Expectation of Privacy.

■■ The protection provided by the Fourth Amendment has been extended to the curtilage. *Oliver v. United States,* 466 U.S. 170, 180, 104 S.Ct. 1735, 1742, 80 L.Ed.2d 214, 225 (1984); *Legg,* 633 N.W.2d at 767. Common law recognized the curtilage as an area to which extends the intimate activity associated with the "sanctity of a man's home and the privacies of life." *Oliver,* 466 U.S. at 180, 104 S.Ct. at 1742, 80 L.Ed.2d at 225 (citing *Boyd v. United States,* 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746, 751 (1886)). "[T]he extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself." *United States. v. Dunn,* 480 U.S. 294, 300, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326, 334 (1987). To determine the extent of a home's curtilage, the *Dunn* Court determined the question should be resolved with reference to four factors. These factors are: (1) "the proximity of the area claimed to be curtilage to the home"; (2) "whether the area is included within an enclosure surrounding the home"; (3) "the nature of the uses to which the area is put"; and (4) "the steps taken by the resident to protect the area from observation by people passing by." *Id.* at 301, 107 S.Ct. at 1139, 94 L.Ed.2d at 334–35. "[T]he primary focus is whether the area in question harbors those intimate activities associated with domestic life and the privacies of the home." *Id.* at 301 n. 4, 107 S.Ct. at 1140 n. 4, 94 L.Ed.2d at 335 n. 4.

■ Applying these factors to the driveway adjacent to Lewis's house, we find the driveway was not within the curtilage. It is common for solicitors, operators of motor vehicles, and other individuals to enter unsecured driveways of private residences. Lewis could not have had a reasonable expectation of privacy in his driveway. Therefore, the Fourth Amendment did not prohibit the police from entering Lewis's driveway. Moreover, the officers' observations of the persons in Lewis's fenced backyard and enclosed rear porch did not violate the Fourth Amendment. *California v. Ciraolo,* 476 U.S. 207, 213–14, 106 S.Ct. 1809, 1812–13, 90 L.Ed.2d 210, 216–17 (1986). That is because there is no legitimate expectation of privacy and no search within the meaning of the Fourth Amendment when authorities can view an activity occurring in the curtilage from a public area. *See United States v. Knotts,* 460 U.S. 276, 282, 103 S.Ct. 1081, 1085, 75 L.Ed.2d 55, 62 (1983); *Texas v. Brown,* 460 U.S. 730, 740, 103 S.Ct. 1535, 1542, 75 L.Ed.2d 502, 512–13 (1983). We reach a different conclusion, however, with respect to the police entering the fenced backyard and enclosed rear porch.

■ The backyard was located adjacent to the home. The enclosed rear porch was located in the fenced backyard. A fence with a gate completely enclosed the backyard. Screens and or windows with a door fully enclosed the rear porch. At the time of the officers' entry onto the property, Lewis was using the fenced backyard and enclosed rear porch for a private gathering. There was no evidence to indicate the fenced backyard or enclosed rear porch was open to the public or used as a place for public gatherings. Although there were no steps taken to protect the area from observation by individuals outside the fenced backyard or enclosed rear porch, it is clear that the area was intimately associated with domestic life and the privacies of Lewis's home. We find the fenced backyard and the enclosed rear porch were within the curtilage

subject to the protection of the Fourth Amendment. This is consistent with decisions from other jurisdictions that have concluded a fenced yard is subject to Fourth Amendment protection as curtilage. *See United States v. Romero–Bustamente*, 337 F.3d 1104, 1107–08 (9th Cir. 2003) (holding a small enclosed backyard immediately adjacent to defendant's home qualified as part of curtilage protected by the Fourth Amendment); *Daughenbaugh v. Tiffin*, 150 F.3d 594, 601–02 (6th Cir. 1998) (holding backyard qualified as part of curtilage protected by the Fourth Amendment); *United States v. Jenkins*, 124 F.3d 768, 772–73 (6th Cir.1997) (holding yard immediately accessible from the house and surrounded on three sides by a wire fence qualified as part of curtilage protected by the Fourth Amendment); *Fixel v. Wainwright*, 492 F.2d 480, 484 (5th Cir.1974) (holding enclosed backyard of four-unit apartment qualified as part of curtilage protected by the Fourth Amendment); *United States v. Van Dyke*, 643 F.2d 992, 994 (4th Cir.1981) (holding honeysuckle patch situated 150 feet from the residence in an exclusionary fence qualified as part of curtilage protected by the Fourth Amendment).

Having found the Fourth Amendment protects against unreasonable searches and seizures in the fenced backyard and enclosed rear porch, we proceed to the next inquiry, whether a recognized exception was available to the officers to enter those areas without a warrant.

## VII. Reasonableness of Warrantless Entry into the Fenced Backyard.

 The no-trespass letter did not give the officers authority to enter the leased property, absent a showing of an exception to the warrant requirements of the Fourth Amendment. Property owners have a right to enter their leased premises under certain circumstances as provided by Iowa Code sections 562A.19 and 562A.29. These Code provisions, however, do not supersede the tenant's constitutional right to be free from unreasonable searches. *See State v. Baker*, 441 N.W.2d 388, 392 (Iowa Ct.App.1989) (holding that defendant's Fourth Amendment rights were violated when the farmhouse he was renting was searched with the property owner's consent but without his consent). In order for the officers to enter the fenced backyard, the State has the burden to prove by a preponderance of the evidence a recognized exception to the warrant requirement.

The State argues the officers' action of entering Lewis's fenced backyard was justified. First, the State asserts Officer Coughlin had a right to approach the two individuals walking quickly towards the porch and stop them for investigatory purposes under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

In the alternative, the State argues when the officers approached the Lewis's residence, they had a reasonable belief the crime of criminal trespass was being committed as defined under Iowa Code section 716.7(2)(*a*). As they arrived on the scene to investigate the trespass, the officers observed two persons located inside the fenced backyard walk quickly towards the enclosed rear porch. The officers wanted to question these individuals in connection with their investigation. When these two individuals failed to comply with the officer's commands to stop, these individuals committed the crime of interference with official acts under Iowa Code section 719.1. Therefore, the State argues the entry on the property was in hot pursuit of these individuals.

 *A. Stop for Investigatory Purposes.* In *Terry*, the United States Supreme Court held that an officer may

conduct a brief investigatory stop of an individual when the officer has a reasonable and articulable suspicion that criminal activity is afoot. 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906. The State argues that the two unknown individuals' conduct of walking quickly to the enclosed porch constitutes a reasonable and articulable suspicion that criminal activity is afoot. Without deciding whether the actions of the two individuals walking quickly towards the house constitute reasonable and articulable suspicion, this suspicion in and of itself would not be enough to allow the officers to enter the curtilage. The officers needed probable cause and exigent circumstances to enter the curtilage without a warrant. *State v. Pickett*, 573 N.W.2d 245, 247 (Iowa 1997). The reasonable and articulable suspicion standard of *Terry* is less than probable cause. "Probable cause exists if the totality of the circumstances as viewed by a reasonable and prudent person would lead that person to believe that a crime has been or is being committed and that the arrestee committed or is committing it." *State v. Bumpus*, 459 N.W.2d 619, 624 (Iowa 1990).

■ When the officers arrived at Lewis's residence, they did not have probable cause to believe a crime had been committed. The no-trespass letter did not give the officers probable cause to believe that the individuals in the fenced backyard or on the enclosed rear porch were trespassers. The no-trespass letter does not afford the police more authority to define "trespass" than the Iowa Code. Iowa Code section 716.7 defines the criminal offense of trespass as, generally, being upon the property of another without his or her permission. The trespass statute acknowledges the lessee's right to grant permission to third parties to be on the leased premises. Iowa Code § 716.7(2)(*a*). Although the police received numerous reports of criminal activity in the area, they did not receive any complaints regarding Lewis's property.

■ Tenants have a right to use their property for any legal purpose. No person will quarrel with the proposition that having a party at a private home and using the backyard to accommodate guests is commonplace. Having a party at 9:30 p.m. on a summer evening should not raise any suspicion. Citizens living in high crime areas have the right to enjoy the use of their property just as much as citizens living in other parts of the city do. The only factor that drew police attention to Lewis's party was that it was taking place in a high crime area. The police never observed any illegal conduct on Lewis's property. When the police pulled in the driveway, the only thing they noticed were two individuals in the fenced backyard walking quickly towards the enclosed rear porch. There was no probable cause to believe the crime of trespass was being committed or that these two individuals walking quickly to the enclosed rear porch were trespassers. Reasonable and articulable suspicion did not give the officers the authority to enter Lewis's fenced yard. Probable cause is the appropriate standard for searches of the curtilage. *Rogers v. Pendleton*, 249 F.3d 279, 287 (4th Cir. 2001).

■ *B. Hot Pursuit.* The State claims when the officers entered the fenced backyard, they were simply in hot pursuit of individuals committing the crime of interference with official acts. The State contends our decisions in *Legg*, 633 N.W.2d 763, and *State v. Pink*, 648 N.W.2d 107 (Iowa 2002), grant the police officers the authority to enter Lewis's enclosed backyard. In *Legg* and *Pink*, police officers attempted to stop the defendants because they were both observed committing traffic violations on public roadways.

*Legg,* 633 N.W.2d at 765; *Pink,* 648 N.W.2d at 108. In both cases, the officers activated the top lights of their vehicles. Neither defendant stopped. Legg continued driving, weaving from curb to curb, and ran a second stop sign. *Legg,* 633 N.W.2d at 765. Pink sped up. *Pink,* 648 N.W.2d at 108. Legg and Pink drove a considerable distance trying to elude the officers. These actions gave the officers probable cause that each defendant also committed the crime of interfering with official acts. *Legg,* 633 N.W.2d at 771; *Pink,* 648 N.W.2d at 109. Both defendants drove to their homes. Legg went into her garage, while Pink entered his house. *Legg,* 633 N.W.2d at 765; *Pink,* 648 N.W.2d at 108. The police entered Legg's garage to arrest her. *Legg,* 633 N.W.2d at 765. They entered Pink's house to arrest him. *Pink,* 648 N.W.2d at 108.

In *Legg* and *Pink,* we held that although the defendants were in an area legally protected by the Fourth Amendment, the officer's entrance did not violate the defendants' Fourth Amendment rights. *Legg,* 633 N.W.2d at 773; *Pink,* 648 N.W.2d at 109. In weighing the competing interests of the State and the defendants as applied to the facts in each particular case, we concluded that the officers' conduct was reasonable in both cases. *Legg,* 633 N.W.2d at 773; *Pink,* 648 N.W.2d at 109. The officer in each case had probable cause to arrest the defendants for a serious misdemeanor while they were in a public place. *Id.* Although Legg and Pink certainly had a legitimate expectation of privacy, probable cause coupled with exigent circumstances justified the officers' minimal invasion of this privacy interest. *Id.* There are distinguishing circumstances between the present case and the *Legg* and *Pink* decisions.

In *Legg* and *Pink,* the officers observed activities taking place on public roadways, which gave them probable cause to believe a crime had been committed. As previously discussed, there was no probable cause to believe a crime was being committed on Lewis's property. The mere act of quickly walking away from the officer and ignoring his directions to stop under these circumstances is not interference with official acts. These individuals were free to go about their business on Lewis's property without police interference. *See People v. Lupinacci,* 191 A.D.2d 589, 595 N.Y.S.2d 76, 77 (N.Y.App.Div. 1993) (holding if police were not authorized to detain defendant, defendant was free to walk away from the arresting officer and could not be charged with obstructing government administration or interfering with an officer in performance of an official function); *B.H. v. State,* 505 So.2d 14, 15 (Fla.Dist.Ct.App.1987) (holding walking away from police officers, refusing to answer their questions, and ignoring their directions to return cannot constitute obstruction of justice if the officers did not have lawful authority to detain the defendant).

The officers' entrance into Lewis's fenced backyard violated his Fourth Amendment rights and his rights under article I, section 8 of the Iowa Constitution against unreasonable searches and seizures. The alleged probable cause and exigent circumstances for the subsequent search of the enclosed rear porch flowed from the warrantless, illegal entry into the fenced backyard. Therefore, the evidence seized from the enclosed rear porch must be suppressed. *Wong Sun v. United States,* 371 U.S. 471, 484–85, 83 S.Ct. 407, 415–16, 9 L.Ed.2d 441, 453–54 (1963).

We are not saying police should not investigate situations they find suspicious. But here, the officers did not have to enter Lewis's backyard to investigate the crime of trespass. The officers could have first

approached the front door and either rang the doorbell or knocked, in an attempt to contact Lewis to ask him if the individuals were on his premises with his permission. If the officer had attempted to contact Lewis at his front door and received no response, the invasion of the curtilage may not have violated Lewis's Fourth Amendment rights. *See Breuer*, 577 N.W.2d at 50 (stating if an officer does not receive a response after ringing the front doorbell of a residence, the officers' entry into the stairway without a warrant was a minimal intrusion upon the tenant's legitimate expectation of privacy and did not violate the Fourth Amendment).

### VIII. Conclusion and Disposition.

The police cannot rely on reasonable suspicion or hot pursuit as the basis for a warrantless entry into Lewis's fenced backyard. Thus, all evidence, which flowed from the warrantless entry, is inadmissible. This ruling is dispositive of the other issues raised on appeal. We reverse the trial court's denial of Lewis's motion to suppress. We reverse and remand for a new trial.

### REVERSED AND CASE REMANDED.

All justices concur except LARSON and CADY, JJ., who dissent.

CADY, Justice (dissenting).

I respectfully dissent. The majority determines the backyard of Lewis' residence to be a protected area under the Fourth Amendment and article I, section 8 of the Iowa Constitution and then confines its analysis of the constitutionality of the police activity by looking to see if the police conduct fits within one of two recognized exceptions to the warrant requirement: probable cause coupled with exigent circumstances and hot pursuit. I agree the backyard was a protected area and the

police were not permitted to enter based upon probable cause and exigent circumstances or hot pursuit. Yet, the problem with the majority's analysis is that it neglects to judge the police under the proper standard. The police went to the premises to conduct an investigation and must be judged by the standard governing such activity, not by the standard applied when the police enter premises to conduct a search.

Typically, courts do not consider police entry onto the curtilage of a home for the purpose of conducting a routine investigation to be a search under a constitutional analysis. Thus, it is not recognized as one of our recognized exceptions to the warrant requirement. The investigation is not normally a search because it typically is confined to those areas where any other visitor to the home could approach to speak with the occupants. However, it may turn into a search if police venture into an area of the curtilage that is constitutionally protected. Nevertheless, even this intrusion for investigative purposes does not violate constitutional prohibitions if the intrusion was reasonable.

Search and seizure jurisprudence requires a two-step analysis. Once an intrusion on a protected interest is found, the reasonableness of the path the police used to locate the occupant of the particular residence becomes the critical point in the analysis. *See State v. Naujoks*, 637 N.W.2d 101, 106 (2001). The opinion of the majority, however, fails to properly consider this important analysis.

A good example of the proper analysis in a case of this nature is found in *Breuer*, 577 N.W.2d 41. In *Breuer*, the police went to the defendant's duplex apartment building to investigate a reckless driving complaint recently lodged against the defendant. *Id.* at 43. Upon their arrival, the police approached the front door of the

duplex and rang the doorbell. *Id.* After receiving no response, the police opened the door, entered a stairway/hallway, and knocked on the door to the defendant's apartment unit. *Id.* After the defendant opened his door, police smelled the odor of burning marijuana. *Id.* The defendant was eventually arrested for possession of a controlled substance and sought to suppress the evidence at trial as an unreasonable search under both state and federal constitutional provisions. *Id.*

We began our analysis in *Breuer* by first observing the two-step approach required under the Fourth Amendment. *Id.* at 45. We first looked to determine if the defendant had a legitimate expectation of privacy in the hallway and, if so, whether the police intrusion into the protected area was reasonable. *Id.* Although we found the hallway area was protected, we nevertheless determined the police intrusion was reasonable based on three reasons. First, the intrusion "was related to a legitimate objective of gathering information as part of an investigation" and was not done randomly. *Id.* at 48. Second, the police did not have any prior knowledge the defendant was involved in drug activity, but approached the residence solely to investigate the reckless driving complaint. *See id.* Finally, considering the right of police to approach a person's private property to speak with the person concerning a police investigation, the entry into the particular protected area constituted a minimal intrusion upon the defendant's expectation to privacy. *Id.* at 48–49.

This is the precise analysis required in this case. Once the majority finds the backyard to be a protected area, *Breuer* requires a review of the facts and circumstances to determine if the investigative intrusion by police was nevertheless reasonable.

The reasonableness of the police action in going into the backyard in this case is supported by several circumstances. First, as in *Breuer*, the entry was related to a legitimate police investigation. *Id.* at 48. The house was located in a high crime area and the neighborhood homeowners had notified police of trouble with trespassing and loitering on leased property. As a part of a neighborhood crime prevention effort, the owner of the particular house rented by Lewis authorized police to arrest any trespassers. Armed with this knowledge, and after observing a gathering of people in the backyard of Lewis' home, police thought they should investigate to see if Lewis was present and had authorized the gathering. Second, as in *Breuer*, police did not know Lewis was involved in any drug activity. *Id.* Instead, the investigation was solely to determine if the occupants in the backyard were trespassers. Third, as in *Breuer*, the intrusion was minimal. *Id.* at 49. The area outside a house does not generally enjoy the same level of privacy as the area inside a house, especially when it is visible from public areas outside the property, as in this case.

Of course, one fact in *Breuer*, absent in this case, is that police first went to the front door to locate the resident before intruding into the protected area. Nevertheless, there is no constitutional requirement that police must first knock on the front door before going into other areas of the curtilage. We emphatically rejected this type of claim in *Breuer* when we said:

> " [t]he reasonableness of any particular government activity does not necessarily or invariably turn on the existence of alternative "less intrusive" means.' "

*Id.* (citation omitted); *accord State v. Jones*, 666 N.W.2d 142, 149 (Iowa 2003) ("[C]onstitutional search and seizure provisions do not require the least intrusive action possible. Instead, they require a

measurement of 'reasonableness, under all the circumstances.'") (Citation omitted)). Moreover, other courts have rejected a hard and fast rule that police must knock at the front door before making any attempt to contact the occupant of the house at another location on the premises. *See Alvarez v. Montgomery County,* 147 F.3d 354, 358 (4th Cir.1998). Such an inflexible approach is contrary to the accepted principle that "[t]he textual 'touchstone of the Fourth Amendment is reasonableness.'" *Id.* (quoting *Florida v. Jimeno,* 500 U.S. 248, 250, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297, 302 (1991) (citation omitted)); *accord Jones,* 666 N.W.2d at 149. The "Supreme Court has 'consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry.'" *Alvarez,* 147 F.3d at 358 (quoting *Ohio v. Robinette,* 519 U.S. 33, 39, 117 S.Ct. 417, 421, 136 L.Ed.2d 347, 354 (1996)). Thus, many courts have permitted police to enter a backyard for a legitimate law enforcement investigation without first knocking on the front door. *Id.* at 358–59. Clearly, entry into the backyard is not unreasonable simply because police do not first knock at the front door.

The reasonableness of the entry into the backyard without first approaching and knocking on the front door in this case is evident from the activity that took place after the police drove into the driveway. The police observed two men behind the gate to the backyard who quickly turned and walked toward the enclosed porch despite a police command to stop. The majority concludes this fact cannot be considered in supporting the police actions because the two men had a right to walk away. I agree the two men had a right to walk away, but the majority is mistaken in its conclusion that walking away is a circumstance that cannot be considered. In *Illinois v. Wardlow,* the Supreme Court made it clear that the right to walk away from approaching law enforcement officers is only a right of the person to "[go] about one's business," not evade reasonable police investigation. 528 U.S. 119, 125, 120 S.Ct. 673, 676, 145 L.Ed.2d 570, 577 (2000). In fact, flight is the opposite of "going about one's business," and flight in response to the sight of police can be used to support reasonable suspicion in the context of a high crime neighborhood. *See id.* at 124–25, 120 S.Ct. at 676, 145 L.Ed.2d at 576–77.

Therefore, the police in this case could properly consider the hasty movements of the two men into the backyard as part of their investigation, and this evidence can also be used to support the reasonableness of the police conduct in going into the backyard without first knocking on the front door. The police were aware many people had assembled in the backyard and the two men's flight revealed a direct, readily accessible means to contact the people on the premises. The backyard was visible from the fence, some of the people in the backyard were visible, and the distance from the gate to the back porch area was short. Under the circumstances, it was not unreasonable that the path taken by the two men might lead the police to the tenant. It would seem impractical for the police to go to the front door in an effort to locate the tenant.

I would conclude the police properly entered the backyard in the pursuit of a legitimate police investigation. Consequently, the police were in an area they were entitled to be when they smelled the presence of marijuana. At this point, the entry ceased to be a police investigation. However, by that time the police had acquired probable cause and their subsequent conduct was not violative of the Fourth Amendment or article one, section eight of the Iowa Constitution.

I would affirm the decision of the district court.

LARSON, J., joins this dissent.