# IN THE COURT OF APPEALS OF IOWA

No. 17-0688
Filed June 6, 2018

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**AUSTIN MICHAEL SCHABLE,**
     Defendant-Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Timothy T. Jarman, District Associate Judge.

The defendant appeals from the denial of his motion to suppress. **REVERSED AND REMANDED.**

Mark C. Smith, State Appellate Defender, and Vidhya K. Reddy, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Darrel L. Mullins, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**POTTERFIELD, Judge.**

Austin Schable was a passenger in a parked vehicle about which a concerned individual called local police. Officers arrived and made contact with the driver, who appeared to be under the influence. An officer had Schable exit the vehicle and then patted him down. After hearing a crinkle when he patted Schable's shirt pocket, the officer reached into the pocket and found a small amount of marijuana in a cellophane package. Schable filed a motion to suppress, in which he argued officers did not have the requisite level of suspicion to stop the vehicle and detain him. He also argued the officers did not have the requisite level of suspicion to conduct a pat down of his person or to reach into his shirt pocket.

The district court denied Schable's motion to suppress, and Schable was found guilty of possession of a controlled substance (marijuana) after a trial to the bench.

On appeal, he maintains the district court should have granted his motion to suppress. He raises the same two issues as he did in his motion to suppress, as well as a number of additional claims of constitutional error that he raises under the ineffective-assistance-of-counsel framework.

**I. Background Facts and Proceedings.**

At approximately 7:30 a.m. on April 26, 2016, an individual called local police about a silver van that was parked in the parking lot of her apartment building. The individual reported she witnessed the van pull into the parking lot, nearly striking two vehicles in the process. Officers Carl Ragar and Eddie Thiphasouk responded to the call in two separate police vehicles. Officer Ragar arrived first, noting the van was parked straddling the line in two parking spaces.

Both tires on the passenger side of the van were completely flat, and it appeared they had been driven on that way. Additionally, some "fresh" damage to the passenger side of the vehicle—white paint that had not yet become dirty—was noticeable.

Officer Ragar made contact with the driver of the vehicle. At the time, Schable was sitting in the passenger seat and a third person was asleep or passed out in a back seat. The driver appeared to be under the influence; his speech was slurred and very slow, and he had trouble with his fine motor skills when responding to the officer's directions. As neither Officer Ragar nor Officer Thiphasouk had the necessary device to conduct a preliminary breath test (PBT), they called for a third officer to bring one.

The timing is unclear, but either while or after the other two officers conducted the PBT with the driver, Officer Ragar approached the passenger side of the vehicle and began to speak with Schable. The officer testified he asked Schable for his identification, which Schable provided. From his position near the vehicle, Officer Ragar ran the information to check for any outstanding warrants and determined Schable did not have any. Next, Officer Ragar "continued talking to [Schable]" because he "knew something was impairing the driver so [he] was assuming there might be some drugs in the vehicle. Just because the driver seemed to be impaired." Then Officer Ragar "had the passenger step out," and "asked him if he had anything illegal on him and [Schable] looked down at the ground." Officer Ragar moved on to more specific questions, asking Schable if he had guns or knives; Schable responded "no" to each question. Officer Ragar then

asked Schable, "Do you have any drugs?" Schable did not respond, which made the officer think Schable "[p]ossibly, yes" had drugs on his person.

During direct examination during the suppression hearing, Officer Ragar testified as follows:

> Q. So you thought well, maybe, it's possible that he has drugs on him? A. Possibly, yes.
> Q. So did you decide then that you were going to pat him down? A. Yeah. I patted him down. I can't imagine I did not ask him if I could check his pockets because I do that with everybody I search. I ask them if I can pat them down, if they say yes, then I say may I check your pockets.
> Q. Okay. And if he said no, what would happen? A. Then I would just pat him down for weapons and be done.
> Q. Okay. Would you classify this as a pat down for weapons that you did? A. Initially, yeah.

During the pat down, Officer Ragar patted Schable's shirt pocket and "felt and actually heard the cellphone crunch in his pocket." He testified he recognized it as cellophane and knew "it's typically used for keeping the drugs in." When testifying, the officer did not "remember if [he] asked [Schable] if [he] could check [Schable's] pockets or if [he] had already asked him to check his pockets, but [he] went into [Schable's] pocket and retrieved the package out." The cellophane wrapper contained a "small bag of marijuana and a burnt blunt."

Additionally, at some point, after the PBT test indicated the driver was not under the influence of alcohol, a fourth officer—a state trooper who was a drug recognition expert—was called to the scene in a fourth police vehicle to perform other tests on the driver.

At the suppression hearing, Officer Thiphasouk testified he did not see any drugs or drug paraphernalia in the vehicle; he also did not smell marijuana or alcohol. He agreed the "only indication of possible impairment was the behavior

of the driver" and "the damage of the vehicle." Similarly, Officer Ragar testified that at the time he began speaking with Schable, the officer had not noticed any drugs or drug paraphernalia anywhere and there was no odor of alcohol or marijuana emanating from the vehicle. During cross-examination, Officer Ragar was asked more questions about reaching into Schable's shirt pocket:

> Q. And your testimony is you asked for consent to reach into his pocket? A. I would not go into a pocket without asking.
> Q. Is it odd that you didn't note in your report that he had given you permission to go into his pocket? A. I don't know that it's odd. It's an oversight.
> Q. You didn't put in here that you asked for permission to go in his pocket? A. No, I didn't.

Schable filed a motion to suppress the marijuana found in his pocket, arguing (1) there was not probable cause to stop the vehicle and detain Schable and (2) the officer violated Schable's constitutional rights when he reached into his pocket following the pat down.

The district court denied Schable's motion to suppress, ruling:

> This court finds that there was no "stop" of the vehicle in which [Schable] was a passenger as the result of any police action. The van had already stopped when it was found by the police. Furthermore, there was no unlawful seizure of the vehicle or its occupants. The vehicle had two flat tires, as well as other damage, and could not legally be driven. In light of their observations of the condition of the van, combined with the citizen report about the manner in which the vehicle had been driven, the police were more than justified to approach and speak with the driver.
> Following his contact with the driver, Officer Ragar concluded that he was impaired by something other than alcohol. As a result, he was justified in speaking with the passenger—the defendant in this action. He was also justified to "pat down" the defendant for safety purposes. Upon detecting the cellophane object, Officer Ragar lawfully asked for permission to retrieve the item from [Schable's] pocket.

After the court denied his motion to suppress, Schable waived his right to a jury trial. He was found guilty of possession of a controlled substance (marijuana) after a trial to the bench.

Schable appeals.

## II. Standard of Review.

"We review the district court's denial of a motion to suppress based on the deprivation of a constitutional right de novo." *In re Pardee*, 872 N.W.2d 384, 390 (Iowa 2015). "In our review, we must make 'an independent evaluation of the totality of the circumstances as shown by the entire record.'" *Id.* (quoting *State v. Tyler*, 867 N.W.2d 136, 152 (Iowa 2015)). Although we give weight to the district court's findings when considering the credibility of witnesses, we are not bound by the district court's finding of facts and, "[i]n a de novo review we must make findings of fact anew." *Russell v. Johnston*, 327 N.W.2d 226, 228 (Iowa 1982).

## III. Discussion.

The Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution protect individuals from unreasonable searches and seizures by government officials. "Subject to a few carefully drawn exceptions, warrantless searches and seizures are per se unreasonable." *State v. Lewis*, 675 N.W.2d 516, 522 (Iowa 2004). "The State has the burden to prove by a preponderance of the evidence that a recognized exception to the warrant requirement applies." *Id.* "Exceptions to the warrant requirement now go well beyond those recognized at the time of enactment of the Fourth Amendment and include consent searches, *Schneckloth v. Bustamonte*, 412 U .S. 218, 222–23 (1973), investigatory detentions, *Terry* [*v. Ohio*,] 392 U.S. [1,] 27 [1968], and an

increasingly broad category of administrative searches and special needs exceptions." *State v. Ochoa*, 792 N.W.2d 260, 278 (Iowa 2010).

While "[a] traffic stop is unquestionably a seizure under the Fourth Amendment," *State v. Tyler*, 830 N.W.2d 288, 292 (Iowa 2013), here, the State is adamant the officers did not detain or seize the vehicle when the officers pulled their squad cars into the parking lot near the van without the use of lights of sirens.

But without a lawful *Terry*-like stop[1] based on the information gleaned from the concerned caller, it is unclear what basis the State believes the officer had to compel Schable's exit of the vehicle. *See State v. Lewis*, 675 N.W.2d 516, 522 (Iowa 2004) ("The State has the burden to prove by a preponderance of the evidence that a recognized exception to the warrant requirement applies."). At the suppression hearing, Officer Ragar testified that at the time he "had the passenger step out," he "knew something was impairing the driver so [he] was just assuming there might be some drugs in the vehicle." Nothing in the officer's testimony indicated that Schable also appeared to be impaired, and the officers testified they did not smell alcohol or drugs coming from the passenger compartment of the car. At the time Officer Ragar had Schable exit the vehicle, the officer had no individualized suspicion regarding Schable.

Under the United States Constitution, officers may order the driver to get out of the vehicle without violating the Fourth Amendment proscription of unreasonable searches and seizures, but only after the officers have lawfully

---

[1] *Terry v. Ohio*, 392 U.S. 1, 22 (1968) ("[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.")

stopped the vehicle for the purpose of a traffic stop. *See Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977). The Supreme Court reasoned that, as the initial intrusion was justified, any additional intrusion "can only be described as *de minimus.*" *Id.* In a footnote, the majority emphasized that the ability to lawfully order the driver out of the vehicle relied on the initial lawful stop, stating:

> Contrary to the suggestion in the dissent of [Justice Stevens], we do not hold today that "whenever any officer has an occasion to speak with the driver of a vehicle, he may also order the driver out of the car." We hold only that once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures.

*Id.* at 112 n.6. (citation omitted).

In *Maryland v. Wilson*, 519 U.S. 408, 410 (1997), the Court extended the holding of *Mimms* to passengers as well. Again, the court stated the holding was confined to instances when the officer had "lawfully stopped [the] car." *Wilson*, 519 U.S. at 410. Additionally, the Court—in balancing "between the public interest and the individual's right to personal security free from arbitrary interference by law officers"—found, "On the personal liberty side of the balance, the case for the passengers is in one sense stronger than that for the driver." *Id.* at 411, 413.

Here, the State asserts that the vehicle had not been seized, so the State does not argue a *Terry*-stop exception. *See Tyler*, 830 N.W.2d at 298 ("Under *Terry*, police may stop a moving automobile in the absence of probable cause to investigate a reasonable suspicion that its occupants are involved in criminal activity." (citation omitted)). The State also does not argue Schable consented to

exiting the vehicle.[2]  Thus, the State must rely on the argument that Schable was not seized when the officer "had him step out" of the vehicle.  But such an argument is unsupported by case law.  As Justice Marshall's dissent in *Mimms* notes, even the majority—which decided that officers could order the driver out of the vehicle because the *additional* intrusion was *de minimus*—did not disagree that ordering the driver from the vehicle was, in fact, a seizure.  434 N.W.2d at 116 n.2 (Marshall, J., dissenting).  "A seizure occurs whenever an 'officer, by means of physical force or show of authority, . . . in some way restrain[s] the liberty of a citizen.'"  *Id.* (quoting *Terry*, 392 U.S. at 19 n.16).  Additionally, in *State v. Becker*, 458 N.W.2d 604, 608 (Iowa 1990), our supreme court held the evidence obtained from the passenger after he was ordered from the vehicle must be suppressed because the seizure occurred without "articulable suspicion of wrongdoing on his part or any need to move him in order to facilitate arrest of the driver or search of the vehicle."  While the holding that the passenger's Fourth Amendment rights had been violated by that seizure was overturned with the Supreme Court's decision in *Mimms* that such a seizure was reasonable, it did not overturn our supreme court's understanding of the event as a seizure.

The officer seized Schable when he directed him to get out of the vehicle, and the State has not established that any recognized exception to the warrant requirement applies here.  While this issue was not raised at the suppression

---

[2] Nothing in the record suggests that Schable consented.  The officer never testified that he asked Schable to exit or that he waited to see how Schable would choose to respond to such a request.  Rather, the officer testified at various times that he "had [Schable] step out."  When Officer Thiphasouk was testifying, he was asked on direct examination if he saw "Officer Ragar at some point get [Schable] out of the car," and Officer Thiphasouk testified, "I believe he did."

hearing, trial counsel's failure to raise the meritorious issue breached an essential duty and prejudiced Schable. *See, e.g.*, *State v. McCoy*, 692 N.W.2d 6, 23 (Iowa 2005) (reaching "[t]he inescapable conclusion . . . that trial counsel had no plausible, tactical, or legitimate reason to refrain" from raising the issue—which was a breach of a duty—and the defendant was prejudiced by the State's ability to use the incriminating evidence against him at trial). Accordingly, we reverse the judgment and sentence of the district court and remand for proceedings consistent with this opinion.[3]

**REVERSED AND REMANDED.**

---

[3] Because we find this issue dispositive, we do not consider any of Schable's other claims, including his arguments for different standards under the Iowa Constitution.