# IN THE COURT OF APPEALS OF IOWA

No. 17-0690
Filed December 19, 2018

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**DUSTIN DEAN DEVRIES,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Chickasaw County, Kellyann M. Lekar (motion to suppress) and Richard D. Stochl (trial), Judges.

Dustin Devries appeals the district court's denial of his motion to suppress. **AFFIRMED.**

Kimberly K. Smith, Waterloo, for appellant.

Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney General, Jeffrey Critchlow, Student Legal Intern, for appellee.

Considered by Danilson, C.J., Vogel, J., and Mahan, S.J.

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**MAHAN, Senior Judge.**

Dustin Devries appeals his convictions for theft in the second degree and absence from custody, claiming the district court erred in denying his motion to suppress evidence found on his property during a warrantless search.  Upon our review, we affirm.

## I.    *Background Facts and Proceedings*

During the summer of 2016, Dustin Devries went to David Lindaman's farm in Floyd County and asked a farmhand to sell him two tractor tires and a metal lathe.  The farmhand declined to make the deal and grew nervous because Devries kept "hound[ing]" him about it.  Devries later "showed up" unannounced at the farm and took the tires and lathe.  Devries said he got the items from Lindaman "for little to nothing."

Lindaman went to the Floyd County Sheriff's Office to report "that someone stole a set of dual tractor tires and rims" and "a 6-foot metal lathe" from his property.  Lindaman told Floyd County Investigator Patrick Shirley that he believed "Dustin Devries had the lathe and tires at his residence [in] New Hampton."  Officer Shirley contacted Chickasaw County Deputy Jason Rosol, who agreed to go with him to Devries' residence "to speak to him about this property."

The officers knocked on the door, but there was no answer.  They yelled Devries' name multiple times and walked to the side of the house "to see if [he] was outside."[1]  In an open shed a short distance from the house, the officers saw a metal lathe matching the description of the lathe reported stolen.  Beside the

---

[1] Deputy Rosol, who was familiar with Devries, knew he usually worked out of a shed "on the west side of the property."

shed, the officers observed tires on a tractor matching the description of the ones reported stolen. After attempts to contact Devries by phone were unsuccessful, the officers decided they would continue to try to locate him the following day.

The next day, Deputy Rosol went to Devries' residence to leave a note on the door requesting he call the sheriff's office. Deputy Rosol noticed trucks on the property that had not been there the previous day and that the tractor from the previous day was missing. The officers then obtained a search warrant for the property; upon execution of the warrant, they found the stolen metal lathe, a large red Matco tool chest reported stolen by another person, stolen tools, and a stolen saw. They did not locate the stolen tractor tires.

Devries was charged with ongoing criminal conduct, theft in the first degree,[2] and absence from custody. Devries filed a motion to suppress evidence discovered on his property without a search warrant, claiming the initial search without a warrant was illegal because "a pretext was used under the guise that the deputies were looking for defendant to talk to him which obviates any plain view exceptions to the warrant requirement." Devries further argued the warrant was illegal because it was based on evidence obtained during the initial illegal search. The district court denied the motion to suppress following a hearing.

In exchange for Devries' agreement to a trial on the minutes, the State dismissed the ongoing criminal conduct charge and reduced the theft charge to theft in the second degree. Following a bench trial, the district court found Devries

---

[2] The parties stipulated the replacement cost of the stolen items totaled more than $10,000.

guilty of the remaining charges of theft in the second degree and absence from custody, and the court entered judgment and sentence.

Devries appeals. Additional facts specific to his claim will be set forth below.

## II. Standard of Review

Devries raises constitutional issues in this appeal. We review constitutional issues de novo. *State v. Jackson*, 878 N.W.2d 422, 428 (Iowa 2016). "We make 'an independent evaluation [based on] the totality of the circumstances as shown by the entire record.'" *State v. Brooks*, 888 N.W.2d 406, 410 (Iowa 2016), *as amended* (Jan. 25, 2017) (citations omitted). "We give deference to the district court's fact findings due to its opportunity to assess the credibility of witnesses, but we are not bound by those findings." *Id.* (citations omitted).

## III. Discussion

Devries contends the warrantless search of his property "violated his right to be secure against an unreasonable search of his home" and the district court erred in denying his motion to suppress evidence obtained pursuant to the search. A warrantless search violates the Fourth Amendment and article I, section 8 of the Iowa Constitution unless a warrant was not required to authorize it. *See id.*; *Jackson*, 878 N.W.2d at 428. "The State bears the burden of proving by a preponderance of the evidence that a warrant was not needed to authorize a warrantless search. In determining whether the State has met this burden, we use an objective standard to assess the conduct of the officer who performed the search." *Jackson*, 878 N.W.2d at 429.

"We employ a two-step approach to determine whether there has been a violation of the Fourth Amendment or article I, section 8 of the Iowa Constitution."[3] *State v. Lowe*, 812 N.W.2d 554, 567 (Iowa 2012). "First, the defendant must show he or she has 'a legitimate expectation of privacy in the area searched.'" *Brooks*, 888 N.W.2d at 410 (citations omitted). "Second, if so, we must determine whether the defendant's rights were violated." *Id.* (citation omitted).

Here, the officers went to Devries' residence to speak with Devries about reports of stolen property. They parked their patrol cars on the driveway, which has a circle, an open area of gravel, and "kind of goes through" the property. They knocked on the door of the house and received no answer. Devries' property is rural—"open" in front with more buildings in the back. The door to the house is about twenty-five feet from the driveway.

The officers knew Devries was self-employed and worked out of a shed on the west side of his property, so they walked toward that shed to see if he was outside working. According to Devries and his girlfriend, you can drive "straight back" through the property on the driveway to Devries' work shed. Another shed or "garage of some sort" was visible from the front door of the house.[4] That shed

---

[3] Devries raises his claim under both the Federal Constitution and the Iowa Constitution, but he has not alleged there is a distinction between how the two provisions should be interpreted. *Cf. State v. Ingram*, 914 N.W.2d 794, 800 (Iowa 2018) ("Where state constitutional law claims have been minimally preserved in this fashion, we may, in our discretion, decide the case based on potentially dispositive federal constitutional grounds and save our state constitutional interpretation for another day."). In this case, we choose to address the Devries' claims simultaneously.

[4] According to Devries' girlfriend, "If you start walking towards the west and look towards it, you might see the corner of it. You will not see the whole entire thing."

was "wide open," and officers observed "right inside that open doorway was a big lathe"[5] and a tractor with tires matching those stolen beside the shed.

Devries testified at the suppression hearing. He acknowledged "[y]ou can see all of the outbuildings" from the driveway, except for the "big shed out back." With regard to the location of tractor tires on his property, Devries stated, "There's probably 15 tractors out there. There's all kinds of tractor tires." When defense counsel asked, "Were they in plain view?" Devries responded, "There was all kinds of tires in plain view. I have probably—there's two big four-wheel-drive tractors sitting out there with tires in plain view. There was duals that the neighbor had out there. I mean, how do you specifically say what kind of tire."

"The determination of whether a person has a legitimate expectation of privacy with respect to a certain area is made on a case-by-case basis, considering the unique facts of each particular situation. The expectation must also be one that society considers reasonable." *Lowe*, 812 N.W.2d at 567. Although the protection provided by the Fourth Amendment is extended to a home's curtilage, the driveway and area outside the front door of Devries' property "was not within the curtilage." *Cf. State v. Lewis*, 675 N.W.2d 516, 523 (Iowa 2004) ("It is common for solicitors, operators of motor vehicles, and other individuals to enter unsecured driveways of private residences . . . . Therefore, the Fourth Amendment did not

---

[5] Defense counsel elicited the following testimony from Deputy Rosol on cross-examination with regard to the location of the lathe:

Q. And none of these items were in plain view, insofar as once you bypassed the residence, you could not see any of these items in plain view once you got past the house, could you? A. That's not correct. No.

Q. How about when you're at the front door of the house? A. Yes, you could see the lathe.

Q. At the—from the front door of the house? A. Correct.

prohibit the police from entering Lewis's driveway. Moreover, the officers' observations of the persons in Lewis's fenced backyard and enclosed rear porch did not violate the Fourth Amendment."). "[Devries] could not have a reasonable expectation of privacy in [these areas]." *See id.* ("[T]here is no legitimate expectation of privacy and no search within the meaning of the Fourth Amendment when authorities can view an activity occurring in the curtilage from a public area.").

Moreover, Devries has not shown the State "unreasonably invaded the protected interest." *Lowe*, 812 N.W.2d at 567–68 (holding if a legitimate expectation of privacy is shown, we must move to step two of the analysis to decide whether the State unreasonably invaded the protected interest). Warrantless searches can be reasonable if they fall within an exception to the warrant requirement. *Id.* at 568. One such exception is for "items in plain view." *State v. Watts*, 801 N.W.2d 845, 850 (Iowa 2011). For this exception to apply, officers "must be rightfully in the place that allows them to make the observation," the item seized must be "in plain view," and the item's "incriminating character" must be "immediately apparent." *State v. McGrane*, 733 N.W.2d 671, 680 (Iowa 2007). Here, testimony from the officers, as well as Devries and his girlfriend, indicates the stolen property was visible from areas not within the curtilage of the house— either the driveway or the door of the house—and the officers immediately recognized the lathe and the tires as matching the descriptions of the property reported stolen. We find no error in the district court's ruling on this issue.

We affirm the district court's denial of Devries' motion to suppress.

**AFFIRMED.**

Vogel, J., concurs; Danilson, C.J., dissents.

**DANILSON, Chief Judge (dissenting).**

I respectfully dissent from the determination of the majority that the officers were in a place they were legally entitled to be. Without a valid premise of legal entitlement, the warrant cannot stand.