# IN THE COURT OF APPEALS OF IOWA

No. 20-0635
Filed September 22, 2021

**JAMES DEAN ARNESON,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

Appeal from the Iowa District Court for Webster County, Rustin T. Davenport, Judge.

James Arneson appeals the denial of his application for postconviction relief. **AFFIRMED.**

Travis M. Visser-Armbrust of TVA Law P.L.L.C., Sheldon, for appellant.

Thomas J. Miller, Attorney General, and Sheryl Soich, Assistant Attorney General, for appellee State.

Considered by Vaitheswaran, P.J. and Greer and Schumacher, JJ.

**VAITHESWARAN, Presiding Judge.**

A jury found James Arneson guilty of two counts of third-degree sexual abuse in connection with acts committed on a teen. The court of appeals affirmed his judgment and sentence. *See State v. Arneson*, No. 16-0808, 2017 WL 4049324, at *5 (Iowa Ct. App. Sept. 13, 2017). Of relevance to this appeal, we stated, "Before charges were filed, a police officer asked Arneson if he would agree to an interview. Arneson went to the police station and was questioned about the sex-abuse allegation. During the interview, he provided police with a DNA sample." *Id.* at *4. We rejected a claim that the DNA sample was obtained in violation of Arneson's right to counsel. *Id.* We preserved a claim that Arneson's "trial attorney was ineffective in failing to challenge the interview and seizure of his DNA under the Fourth and Fifth Amendments to the United States Constitution and article I, sections 8 and 9 of the Iowa Constitution." *Id.* at *5.

Arneson filed a postconviction-relief application in which he raised the preserved ineffective-assistance-of-counsel claim. To prevail, Arneson had to show (1) deficient performance and (2) prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Following an evidentiary hearing, the district court concluded Arneson failed "to establish his burden for even the first prong of the test." The court dismissed the application. Arneson appealed.

"Both the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution protect individuals from unreasonable searches and seizures." *State v. Warren*, 955 N.W.2d 848, 859 (Iowa 2021) (citing U.S. Const. amend. IV; Iowa Const. art. I, § 8). "Subject to a few carefully drawn exceptions, warrantless searches and seizures are per se unreasonable." *State*

*v. Lewis*, 675 N.W.2d 516, 522 (Iowa 2004); *see also State v. McGee*, 959 N.W.2d 432, 445 (Iowa 2021). One of the exceptions recognized by the supreme court is a consensual search or seizure. *See Lewis*, 675 N.W.2d at 522. "We ordinarily 'interpret the scope and purpose of the Iowa Constitution's search and seizure provisions to track with federal interpretations of the Fourth Amendment' due to their nearly identical language, though we remain cognizant of our duty to independently interpret the Iowa Constitution." *Warren*, 955 N.W.2d at 859 (citation omitted).

Arneson argues the two constitutional provisions as one. He concedes he consented to the warrantless seizure of his DNA but asserts his consent was involuntary and his trial attorney should have raised the issue.

Voluntariness of consent requires consideration of several factors:

> [P]ersonal characteristics of the [consenter], such as age, education, intelligence, sobriety, and experience with the law; and features of the context in which the consent was given, such as the length of detention or questioning, the substance of any discussion between the [consenter] and police preceding the consent, whether the [consenter] was free to leave or was subject to restraint, and whether the [consenter's] contemporaneous reaction to the search was consistent with consent.

*State v. Lane*, 726 N.W.2d 371, 378 (Iowa 2007) (emphasis omitted). The district court addressed these factors as follows:

> During the police interview, the detective questioning Arneson is in plain clothes and seated at the end of the table from Arneson. The detective is not in between Arneson and the door of the interview room. Arneson even states at one point, "See I'm not looking at you as a detective prosecuting me, I'm looking at you as the guy in the middle." As pointed out in the State's Brief in Resistance, the detective told Arneson that he was free to go, told him he was not under arrest, and explained the way that Arneson could easily leave the building. Further, Arneson arrived at the police station voluntarily

and was not arrested until approximately one year later. Arneson even left the room at one point to use the restroom.

. . . .

. . . [T]he detective begins by asking Arneson if he understands what DNA is and the different sources of DNA. The detective then provides explanation and information to these questions. The detective asks Arneson if his DNA would show up on the victim's body after an examination. The detective proceeds to say that he is asking Arneson for his DNA to compare to the victim's examination kit. Arneson then responds, "This is crazy! You can have my DNA, I don't care." Later on in the interview, Arneson also says, "Let's do your DNA. I'm going to give my DNA because I didn't do anything . . . ." Therefore, the Court finds that Arneson gave voluntary consent to the DNA sample and it was not coerced.

The record, including a recording and transcript of the police interview, supports the district court's findings. Reviewing the record de novo, we also note that Arneson was sixty-two years old, had a GED and "a degree in reinforced plastics, fiberglass," and had extensive work experience including employment "as a superintendent for a construction company" and supervisory duties over nineteen people. Arneson seemed unimpaired during the interview, although he acknowledged an addiction to cold pills. As for Arneson's familiarity with the law, he knew the matter was serious enough to ask for an attorney. He also asked the detective "why" the detective wanted his DNA and, when told it was for comparison purposes, said "I understand." Notably, the detective did not dissuade Arneson from retaining counsel, nor did he sugar coat the purpose of the DNA sample. Even with an understanding of its import, Arneson said, "I want to give you the DNA, I think that's fair." He repeated, "I haven't done anything, but you're more than welcome to have the DNA." "Want" and "welcome" are not words of coercion.

Like the district court, we conclude Arneson voluntarily consented to give the detective a DNA sample. It follows that Arneson's trial attorney could not have

performed deficiently in failing to seek suppression of the sample under the Fourth Amendment.

Arneson also mounts a Fifth Amendment challenge to the concededly consensual taking of his DNA. At the same time, he acknowledges "[t]he taking of a sample of a person's bodily fluids was a matter under the purview of the Fourth Amendment's restrictions." His concession is apt. The Fifth Amendment to the United States Constitution protects testimonial evidence. *See State v. Decker*, 744 N.W.2d 346, 354–55 (Iowa 2008). The DNA sample was non-testimonial evidence. *See id.* at 355 ("[C]ompelling an arrested suspect to submit to fingerprinting, photographing, or other physical measurements . . . or to submit to a blood test does not result in the gathering of testimonial evidence."); *see also Schmerber v. California*, 384 U.S. 757, 765 (1966) ("Since the blood test evidence, although an incriminating product of compulsion, was neither petitioner's testimony nor evidence relating to some communication or writing by the petitioner, it was not inadmissible on [Fifth Amendment] privilege grounds."); *cf. Mitchell v Wisconsin*, 139 S. Ct. 2525, 2532–39 (2019) (analyzing a warrantless seizure of blood from an unconscious person under the Fourth Amendment); *McGee*, 959 N.W.2d at 435 (applying *Mitchell* "to cases of suspected driving while under the influence of controlled substances, in addition to alcohol-related cases"). Because the Fifth Amendment is inapplicable, Arneson's attorney did not perform deficiently in failing to seek suppression on this ground.

We affirm the district court's denial and dismissal of Arneson's postconviction-relief application.

**AFFIRMED.**