**STATE of Iowa, Appellee,**

v.

**Tyson Fairl TURNER, Appellant.**

No. 99–1247.

Supreme Court of Iowa.

July 5, 2001.

Linda Del Gallo, State Appellate Defender, and Tricia A. Johnston, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Karen B. Doland, Assistant Attorney General, John P. Sarcone, County Attorney, and James Ward, Assistant County Attorney, for appellee.

TERNUS, Justice.

The defendant, Tyson Turner, challenges his conviction of the crime of felon

in possession of a firearm. *See* Iowa Code § 724.26 (1997). He claims the court erred in admitting inculpatory statements he made prior to being given *Miranda* warnings. The State contends *Miranda* warnings were not required at the time Turner made the statements because Turner was not in custody and the statements were volunteered.

In our de novo review, we conclude that *Miranda* warnings were required and any incriminating statements made by Turner should have been suppressed. Therefore, we reverse the judgment of conviction and remand for a new trial.

## I. *Background Facts and Proceedings.*

On November 24, 1998, Des Moines police arrested Turner and charged him with three crimes: (1) dominion and control of a firearm by a felon in violation of Iowa Code section 724.26 (count I); (2) trafficking in stolen weapons in violation of Iowa Code section 724.16A (count II); and (3) possession of a controlled substance in violation of Iowa Code section 124.401(5) (count III). At the time of trial Turner waived a jury trial and agreed to submit the case on the minutes of testimony and the record made at an earlier suppression hearing. In return, the State dismissed counts II and III. The trial court found Turner guilty of count I and sentenced him to an indeterminate prison term of five years. The court then suspended this sentence and placed the defendant on probation.

The defendant now appeals the court's judgment. He asserts the trial court erred in denying his motion to suppress inculpatory statements obtained by the police as a result of a custodial interrogation conducted in violation of *Miranda*. He also asserts there was insufficient evidence to establish he "knowingly" possessed a firearm, a necessary element of the charge of which he was convicted. *See* Iowa Code § 724.26.[1] Finally, he asserts that the district court's finding of guilt was contrary to the weight of the evidence. The record reveals the following facts and circumstances surrounding the defendant's arrest and subsequent conviction.

Prior to November 24, 1998, Des Moines police suspected drug trafficking at the defendant's apartment, 1835 Mondamin Avenue, apartment no. 2 in Des Moines. These suspicions were based on a citizen complaint and surreptitious surveillance of the apartment by narcotics investigator, Michael Westlake, and an area patrol officer, Joe Widlowski.

On the evening of November 24, 1998, Officer Widlowski happened to be in the area to serve an arrest warrant on an individual thought to be located in a residence across the street from the apartment under surveillance. Widlowski and another policeman, Officer Cretsinger, were unsuccessful in locating the warranted individual, but noticed "three individuals standing at the base of the stairs of apartment number 2." Due to the open narcotics complaint at the apartment, Widlowski and Cretsinger decided to talk to these individuals to "see what's going on." As the officers crossed the street, Turner, one of the three men in the group, started to ascend the stairs to apartment no. 2. Widlowski yelled at Turner several times to come back down, but Turner merely responded "just a minute" and continued up the stairs. Widlowski sped up his pur-

---

1. Iowa Code section 724.26 provides:
 A person who is convicted of a felony in a state or federal court and who knowingly has under the person's dominion and con- trol, receives or transports or causes to be transported a firearm or offensive weapon is guilty of a class "D" felony.

suit of Turner, but when he reached apartment no. 2, Turner had entered it and locked the door.

Returning to street level, Widlowski and Cretsinger secured the other two individuals and radioed for back-up help. Widlowski then returned to the apartment, knocked on the door several times, but received no response. When back-up help arrived, Turner opened the door and walked out. Widlowski immediately placed Turner in handcuffs and did a quick pat down for weapons. No weapons were found. He then placed Turner with the other two secured individuals.

Widlowski next radioed Officer Westlake and advised him of the situation. Westlake testified that Widlowski informed him "the defendant had been *arrested*." (Emphasis added.) While waiting for the narcotics officers to arrive, Cretsinger and Widlowski conducted a "safety" search of the apartment to determine whether anyone else was inside. During this search, Widlowski observed marijuana floating in the toilet, a fact he later passed on to Westlake.

When Westlake and his partner, Officer Larine Blad, arrived, they found the defendant handcuffed and sitting outside on some railroad ties. At this point, they took over the investigation, and escorted Turner to their unmarked police car. Once inside the vehicle, the officers told Turner about the narcotics complaint on the residence and requested his permission to search the apartment in order to close out the complaint. Turner verbally agreed to give consent to the search and was taken, still handcuffed, up to the apartment by Officers Westlake, Blad, and Cretsinger. Once inside the apartment Turner's handcuffs were removed so he could sign the consent-to-search form. Turner was not handcuffed again until a

firearm was discovered. At no time was Turner read his *Miranda* rights.

After written consent was obtained, the officers began searching the residence. During the search, Officer Cretsinger discovered a 9–millimeter handgun in a microwave located in the kitchen. Cretsinger returned to the living room of the small apartment where the defendant and the other officers were located. The officers were aware that Turner was a convicted felon and so, upon discovery of the gun, knew that a crime had possibly been committed.

At this point, Turner made incriminating statements regarding his knowledge of the firearm and its ownership. These statements consisted of a denial of ownership and inconsistent contentions as to the identity of the true owner. (It was later determined that the gun had been stolen from an individual not named by Turner as the owner.) Turner admitted that he knew the weapon was in the apartment. The testimony of the police officers was conflicting as to whether these statements were made in response to questioning by one of the officers.

The officers then placed Turner in handcuffs and arrested him for possession of a firearm as a felon. During his booking at the police station, marijuana was found in Turner's coat pocket, resulting in the additional charge of possession of a controlled substance.

On January 20, 1999, Turner filed a motion to suppress, asserting that statements he made during the search of his residence occurred in the absence of any *Miranda* warnings. At the hearing on this motion, Turner argued that the statements resulted from a custodial interrogation. The court rejected the defendant's argument, finding that at the time the inculpatory statements were made, the defendant "was no longer in custody and therefore no *Miranda* warnings were re-

quired." This finding made it unnecessary for the district court to decide whether the challenged statements were made in response to interrogation by the officers.

The case was then submitted for a bench trial on a stipulated record. The trial court found Turner guilty of exercising dominion and control over the handgun.

After the defendant filed his appeal, this court entered an order remanding the case to the district court to allow the court to make a factual finding on whether the defendant's statements were spontaneous or in response to interrogation by the officers. The district court, on remand, found that the defendant "volunteered" the inculpatory statements.

The appeal is now before us for resolution. There are three issues raised: (1) whether the trial court erred in denying Turner's motion to suppress; (2) whether the evidence was sufficient to support the court's determination that the defendant was guilty of the charge of felon in possession of a firearm; and (3) whether the district court's finding of guilt was contrary to the weight of the evidence.

II. *Did the District Court Err in Refusing to Suppress the Incriminating Statements Made by the Defendant?*

A. *Scope of review.* The defendant claims his alleged custodial interroga-

tion conducted without the benefit of a *Miranda* warning violated his Fifth Amendment rights under the United States Constitution. *See* U.S. Const. amends. V, XIV. Our review of a district court's refusal to suppress statements allegedly made in violation of constitutional guarantees is de novo. *See State v. Countryman*, 572 N.W.2d 553, 557 (Iowa 1997). Under this review, we "make an independent evaluation of the totality of the circumstances as shown by the entire record." *State v. Howard*, 509 N.W.2d 764, 767 (Iowa 1993). We give deference to the district court's fact findings due to its opportunity to assess the credibility of witnesses, but we are not bound by those findings.[2] *See State v. Gravenish*, 511 N.W.2d 379, 381 (Iowa 1994).

B. *Admissibility of inculpatory statements.* The Fifth Amendment to the United States Constitution provides in relevant part, "No person ... shall be compelled in any criminal case to be a witness against himself...." U.S. Const. amend. V. This right against self-incrimination is incorporated into the Due Process Clause of the Fourteenth Amendment and thus applies to the States. *See Malloy v. Hogan*, 378 U.S. 1, 6–11, 84 S.Ct. 1489, 1492–95, 12 L.Ed.2d 653, 658–61 (1964).

In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the

---

2. We take this opportunity to correct a short line of opinions that have mistakenly stated our scope of review with respect to factual findings of the district court in cases alleging constitutional error. In *State v. Cadotte*, 542 N.W.2d 834 (Iowa 1996), we said, in a case raising Fourth Amendment claims, that "[f]act-findings underlying the district court's ruling ... are binding on us if supported by substantial evidence." 542 N.W.2d at 836. As authority for this erroneous statement, we relied on *State v. Frake*, 450 N.W.2d 817, 818 (Iowa 1990), a case involving only issues of

statutory interpretation and application. Since our *Cadotte* decision, this court has cited and relied on *Cadotte's* flawed statement of our scope of review in several other cases. *See State v. Kubit*, 627 N.W.2d 914, 918 (Iowa 2001); *State v. Heminover*, 619 N.W.2d 353, 356 (Iowa 2000); *State v. Gillespie*, 619 N.W.2d 345, 350 (Iowa 2000); *State v. Cline*, 617 N.W.2d 277, 280 (Iowa 2000); *State v. Canas*, 597 N.W.2d 488, 492 (Iowa 1999). We now disavow the statements made in *Cadotte* and its progeny with respect to our review of a court's factual findings in cases raising constitutional questions.

United States Supreme Court stated that a citizen's privilege against self-incrimination "is fulfilled only when the person is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will.'" 384 U.S. at 460, 86 S.Ct. at 1620, 16 L.Ed.2d at 715 (quoting *Malloy,* 378 U.S. at 8, 84 S.Ct. at 1493, 12 L.Ed.2d at 659). The Court further noted that because of the "compulsion inherent in custodial surroundings, no statement obtained from [a] defendant can truly be the product of his free choice[,]" unless adequate protective measures are employed. *Id.* at 458, 86 S.Ct. at 1619, 16 L.Ed.2d at 714. Thus, the Court held that before an individual who is in custody can be subjected to any interrogation, he must be advised of his constitutional rights to remain silent and to have appointed counsel present prior to any questioning. *Id.* at 478–79, 86 S.Ct. at 1630, 16 L.Ed.2d at 726.

■ The requirements of *Miranda* are not triggered "unless there is both custody and interrogation." *State v. Davis,* 446 N.W.2d 785, 788 (Iowa 1989). The Court stated in *Miranda* that custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. We now examine the trial court's findings that Turner was not in custody and that his statements were not in response to interrogation by law enforcement personnel.

■ C. *Was the defendant in custody so as to be entitled to* Miranda *warnings?* The initial question that must be answered is whether Turner was in custody at the time the inculpatory statements were made. *See State v. Smith,* 546 N.W.2d 916, 920 (Iowa 1996). We employ an objective test: "the only relevant inquiry is how a reasonable man in the sus-

pect's position would have understood his situation." *Berkemer v. McCarty,* 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317, 336 (1984). "[A]ll of the circumstances surrounding the interrogation" are examined. *Stansbury v. California,* 511 U.S. 318, 322, 114 S.Ct. 1526, 1529, 128 L.Ed.2d 293, 298 (1994).

This court's decision in *In re J.D.F.,* 553 N.W.2d 585 (Iowa 1996), is helpful in evaluating the circumstances of the case before us. In *In re J.D.F.,* a police officer stopped a juvenile to investigate a report that a juvenile had been seen carrying a weapon. 553 N.W.2d at 587. The juvenile ran, but was apprehended. *Id.* The officer handcuffed the juvenile, placed him in the back of the squad car, and questioned him about his knowledge of a gun. *Id.* The juvenile eventually led the officer to a loaded pistol hidden under a tree. *Id.* After delinquency charges were filed against him, the juvenile moved to suppress his statements on the ground that he had not been given *Miranda* warnings. *Id.* This motion was denied, and the juvenile was adjudicated to have committed a delinquent act. *Id.* In ruling on the juvenile's appeal, this court held that upon "[b]eing handcuffed and placed in the police car by the police officers, JDF was clearly in custody." *Id.* at 588.

A very similar situation exists here. Officers handcuffed Turner, "secured" him with the other two individuals being detained, and later placed him in an unmarked police vehicle to conduct further investigation. This detention clearly curtailed Turner's freedom of movement in a significant way. Even the officers themselves characterized Turner as being "arrested" and being "in custody" at this time.

The trial court, however, concluded that once Turner's handcuffs were removed in the apartment, "he was no longer in custo-

dy and therefore no *Miranda* warnings were required." We disagree. Turner's handcuffs were not removed until it was necessary to allow him to sign the consent form. Thereafter, three officers were always present in the apartment while it was searched. There was no evidence that Turner was told he was free to leave. We do not think the mere fact Turner's handcuffs were removed so he could sign the consent form would lead a reasonable person in his position to believe that his custodial status had changed. We conclude, therefore, that Turner was in custody at the time he made the incriminating statements.

D. *Were the statements made by the defendant the product of interrogation?* As previously noted, in order for *Miranda* rights to attach, there must not only be custody, but interrogation, as well. *See Davis,* 446 N.W.2d at 788. Statements made after a person is taken into custody are not automatically considered the product of interrogation. *See Rhode Island v. Innis,* 446 U.S. 291, 299, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297, 307 (1980). Thus, statements that are volunteered, spontaneous and freely made by an arrested person do not come within the scope of *Miranda. See State v. Brown,* 176 N.W.2d 180, 182 (Iowa 1970); *accord Miranda,* 384 U.S. at 478, 86 S.Ct. at 1630, 16 L.Ed.2d at 726 ("Any statement given freely and voluntarily without any compelling influences is . . . admissible in evidence."). Consequently, inculpatory statements that were made prior to any police questioning are generally admissible. *See Innis,* 446 U.S. at 300–01, 100 S.Ct. at 1689–90, 64 L.Ed.2d at 307.

Turning to the present case, the district court found that Turner "volunteered" the statements with respect to ownership of the gun. We interpret this finding to mean that the court found the statements to be spontaneous and not the product of interrogation.

The evidence in the record on this issue came from Officers Westlake and Blad, who were present during the search of the apartment. Officer Westlake testified that the defendant was not questioned and "just started saying that it [the gun] wasn't his." Officer Blad's testimony on direct examination was not as clear. She said that "[t]here was just a question as to whose gun is it," but she did not recall whether the defendant was asked any questions before he started talking. On cross-examination, Blad testified that Officer Cretsinger came into the living room with a gun that he had found in the microwave. She said that somebody—either Westlake or Cretsinger—said to Turner, "Whose gun is this?" She acknowledged that it was at that point that Turner "started blabbing on about various explanations for what he knew about the gun."

Apparently, the trial court found Officer Westlake to be more credible, but the court did not state this conclusion in its ruling nor give any reason for why Westlake's testimony was more believable. Common sense would point in the other direction. *See generally State v. Frake,* 450 N.W.2d 817, 819 (Iowa 1990) (stating that reasonableness of a witness's testimony may be considered in determining believability of testimony). Under Westlake's version of the events, Turner, simply upon seeing the gun, blurted out denials of ownership and assertions about who owned it. It seems more plausible that the officer who discovered the weapon came into the living room in order to investigate the ownership of the gun and at that point asked Turner what Turner knew about it. In fact, this is exactly what Officer Blad said happened.

Adding to Blad's credibility is the fact that her testimony was given at the

suppression hearing where the focus was on whether Turner's statements should be held inadmissible because they were the result of a custodial interrogation. Blad knew when she testified that her version would be damaging to the prosecution's ability to use the challenged evidence. If the officers had any motive to color the facts in one direction or another, it would be in the direction of the statements preceding any questioning, not as Blad testified—that the questions came first. Whether a witness has "any personal interest, motive or purpose to remember so as to shade meanings of words and actions relating to the testimony" is highly relevant to the witness's credibility. *Gregory v. Gregory*, 248 Iowa 672, 678, 82 N.W.2d 144, 148 (1957); *accord Frake*, 450 N.W.2d at 819 (stating court may consider "the witness's interest in the trial" to assess witness's credibility). Thus, the fact that Blad's testimony was contrary to the State's interest heightens her credibility.

 The State bears a heavy burden to establish the admissibility of statements made by an individual while in custody. *See State v. Cullison*, 227 N.W.2d 121, 127 (Iowa 1975). We do not think it has met that burden here. We hold, therefore, that Turner's statements were the product of a custodial interrogation. Because he had not been given his *Miranda* warnings, the statements were inadmissible.

 E. *Was the erroneous admission of this evidence harmless error?* The State argues that even if Turner's statements should not have been admitted, any error was harmless. "In order for a constitutional error to be harmless, the court must be able to declare it harmless beyond a reasonable doubt." *State v. Deases*, 518 N.W.2d 784, 791 (Iowa 1994). "If substantially the same evidence is in the record, erroneously admitted evidence is not considered prejudicial." *Id.*

In the present case, Turner's statements were used by the State to prove that he was in "dominion and control" of the firearm. Although Turner denied ownership of the gun, his statements indicated that he knew the gun was in the apartment. In addition, his conflicting statements about who did own the gun were another indication of guilt. *See State v. Mayberry*, 411 N.W.2d 677, 682 (Iowa 1987) (stating that guilt may be inferred from defendant changing his story); *State v. Blair*, 347 N.W.2d 416, 422 (Iowa 1984) (stating that "a defendant's inconsistent statements are probative circumstantial evidence from which the jury may infer guilt"). Finally, assuming that Turner volunteered the statements as the trial court believed, his statements could indicate a "consciousness of guilt." *State v. Cox*, 500 N.W.2d 23, 25 (Iowa 1993) ("Admissions may be implied by the conduct of the defendant subsequent to a crime, including fabrication, when such conduct indicates a consciousness of guilt."). Thus, the erroneously admitted statements were prejudicial to Turner's defense.

 The State argues, nonetheless, that any prejudice was harmless because Turner's dominion and control of the gun was established without his inculpatory statements based on his dominion and control of the apartment. We have long held that "dominion and control" may be shown by constructive, as well as actual, possession. *See State v. Reeves*, 209 N.W.2d 18, 22 (Iowa 1973) (addressing possession of illegal substances). Constructive possession exists when, although the contraband is not on one's person, he or she controls the contraband or has the right to control it. *See id.*

 This court discussed in *Reeves* the circumstances under which such control or right to control may be proved by infer-

ence. There are two. "If the *premises* on which such substances are found are in the *exclusive* possession of the accused," the jury may infer constructive possession. *Id.* at 23 (emphasis added). We specifically noted that joint possession of the premises would not be sufficient to support an inference of control or knowledge of the contraband. *Id.; accord United States v. Morrison,* 991 F.2d 112, 115 (4th Cir.1993); *White v. State,* 47 Ark.App. 127, 129, 886 S.W.2d 876, 878 (1994); *State v. Mercado,* 887 S.W.2d 688, 691 (Mo.Ct.App.1994); *Puente v. State,* 888 S.W.2d 521, 526 (Tex. App.1994).

The second situation in which we recognized an inference of possession was "when the contraband is found in a *place* which is *immediately and exclusively* accessible to the accused and subject to his [joint or sole] dominion and control." *Reeves,* 209 N.W.2d at 22 (emphasis added); *accord State v. Wiley,* 366 N.W.2d 265, 270 (Minn. 1985) (requiring exclusive access); *Marshall v. State,* 110 Nev. 1328, 1332, 885 P.2d 603, 606 (1994) (applying same rule stated in *Reeves*). It is important to note that this second scenario focuses on the *place* where the drugs are found as contrasted to the *premises* in which they are found.

With these principles in mind, we now turn to the facts of this case. The record shows that Turner resided at the apartment, but there is no evidence that he was the sole resident of the apartment. To the contrary, Officer Westlake testified at the suppression hearing that Turner might have said that he was not on the lease. Officer Blad testified there was some comment by Turner that the apartment was his and his girlfriend's. This evidence tends to indicate that Turner was *not* the sole resident of the apartment. As stated in *Reeves,* joint possession of the premises will not support an inference of dominion and control of contraband found on the premises. 209 N.W.2d at 23. Here, there is not sufficient evidence to prove sole possession of the premises and, hence, constructive possession of the gun under the first *Reeves* scenario.

Nor is there any evidence that the microwave where the gun was found was "immediately and exclusively accessible" to Turner. Turner was in the living room of the apartment; the gun was found in a different room. Therefore, there are no facts from which the court could find constructive possession of the gun by Turner under the second *Reeves* scenario.

In summary, the record would not support a finding of constructive possession under the rules announced in *Reeves.* Therefore, the only evidence supporting a finding that Turner had dominion and control of the gun were his incriminating statements indicating his ownership of the weapon. Thus, the erroneous admission of these statements was not harmless beyond a reasonable doubt.

### III. *Was the Evidence Sufficient to Support Defendant's Conviction?*

▬▬▬ This court reviews challenges to the sufficiency of the evidence for correction of errors at law. *See State v. Chang,* 587 N.W.2d 459, 462 (Iowa 1998). We will uphold a verdict if it is supported by substantial evidence. *See id.* We view the evidence in a light most favorable to the State. *See Cox,* 500 N.W.2d at 24. "Substantial evidence means such evidence as could convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt." *Id.* We consider all the evidence, not just the evidence supporting the defendant's guilt. *See State v. Hopkins,* 576 N.W.2d 374, 377 (Iowa 1998).

The sole argument made by the defendant to support his claim that the evidence did not support his conviction was that the trial court, as the finder of fact, allegedly

expressed doubt as to Turner's guilt. At sentencing the court stated, "There is some question in my mind, frankly, about your actual knowledge of the presence of this gun *in the microwave and how it got there . . . .*" (Emphasis added.) Turner claims this statement indicates the judge had "significant doubt" as to the knowledge element of the crime. *See* Iowa Code § 724.26 (defining crime as "knowingly [having] dominion and control . . . [of] a firearm").

We disagree that the court's statement at Turner's sentencing indicated a doubt that Turner knowingly possessed the gun. In its ruling finding the defendant guilty of possession of a firearm by a felon, the court stated, "Statements made by defendant [and] admitted by the [c]ourt indicate knowledge by the [d]efendant of the existence of the firearm *inside the residence.*" (Emphasis added.) Although the court may have believed that Turner did not know how the gun got *in the microwave,* the judge apparently had no doubt that Turner knew the gun was somewhere *in the residence.*

Based on our consideration of the court's statement in the larger context of the entire trial court proceedings, we do not think the judge expressed doubt as to the defendant's guilt. Therefore, we reject the defendant's argument that the evidence was insufficient to support his conviction on this basis.

IV. *Summary and Disposition.*

The statements made by Turner concerning ownership of the handgun were the product of a custodial interrogation. Because he had not been given any *Miranda* warnings, the statements were inadmissible. Therefore, the trial court erred in failing to grant Turner's motion to suppress. This error was not harmless because Turner's incriminating statements

supported the element of "dominion and control" necessary to a finding of guilt, *see* Iowa Code § 724.26, and there was no other evidence, standing alone, that would have established dominion and control. We reject the State's contention that constructive possession was shown by Turner's possibly joint residency of the apartment where the gun was found.

The trial court did not express doubt as to the defendant's guilt of the charged offense and, therefore, Turner is not entitled to a judgment of acquittal.

We grant the defendant a new trial based on the trial court's erroneous admission of his inculpatory statements. This conclusion makes it unnecessary to decide whether Turner is entitled to a new trial based on his claim that the verdict was against the weight of the evidence.

**REVERSED AND REMANDED.**