Dawn Kobel appeals following entry of judgment and sentence for one count of child endangerment and one count of multiple acts of child endangerment, in violation of Iowa Code sections726.6 and 726.6A (1999). She asserts the record does not contain substantial evidence in support of her convictions. She also contends both charges should have been dismissed because they were not brought within the applicable statute of limitations. We affirm.
I. Background Facts and Proceedings.
Kobel and David Hanse are the biological parents of two daughters, K.M. and B.M. At the times relevant to this proceeding, Kobel and Hanse lived together with the two children.
The family has a history of involvement with the Iowa Department of Human Services (DHS). Humbolt County DHS workers became involved with the family in January 2000 after the family moved to Humbolt County. During an unannounced visit to the family home, DHS workers observed pornographic magazines "in plain sight for the kids to see." The workers also received reports that known sex offenders were being allowed into the home. A caseworker told Kobel and Hanse they were not to expose the children to pornographic material and told them to keep known sexual offenders out of the home. Hanse's family members also voiced concerns, to Kobel as well as Hanse, that sex offenders were being allowed in the home.
On April 2, 2001, social workers made an unannounced visit to the home. They looked through a window and observed that a pornographic movie was playing on a television in the front room. As they knocked on the door, the social workers could hear the television and the voices of K.M. and B.M. Hanse belatedly answered the door, wearing only pants. The social workers observed Hanse was "flushed," "sweaty," "nervous," and "had an erection." Hanse admitted he had been watching an adult movie. K.M., then age four, nervously informed the social workers her panties were on "funny" because they were pulled up on one leg. Kobel was not at home.
The social workers took K.M. to a "safe house" designed to provide protective services to children. B.M., then age two, was left in Hanse's care. At the safe house K.M. informed the social workers she had been "making sex with her dad," and that the reason it had taken so long to answer the door was because they all had to put their pants back on. K.M. then reported various sexual activities that had occurred involving not only Hanse, but other persons Hanse would invite to the home. K.M. appeared relieved when she was told she was not returning to the home, but expressed concern that Hanse would "make sex" with B.M. and that B.M. was too small. Social workers returned to Hanse and Kobel's residence and removed B.M. from the home.
The following day, a doctor performed a sexual assault examination on each child. K.M.'s examination revealed a torn hymen and a hymenal opening consistent with that of a twelve-year-old. Her injuries were consistent with the insertion of an adult finger or attempted penile penetration. The injuries were not considered "acute" because there was no indication they had occurred within the past twenty-four hours. B.M.'s examination revealed an enlarged clitoris consistent with a history of masturbation.
K.M. and B.M. were placed in foster care on April 3, 2001. K.M. was later diagnosed with genital warts and posttraumatic stress disorder (PTSD). B.M. initially engaged in frequent masturbation and exhibited aberrant sexual behavior with the foster family's dogs.[1] Both children were adopted by their foster care parents after Kobel's and Hanse's parental rights were terminated.
By trial information filed August 8, 2003, the State jointly charged Kobel and Hanse for criminal acts allegedly committed between April 2, 2000, and April 2, 2001. Kobel was charged with one count of multiple acts of child endangerment for acts allegedly committed against K.M. and one count of child endangerment for an act allegedly committed against B.M.[2]
The matter proceeded to a jury trial in March 2004.
During trial K.M. detailed the various sexual acts inflicted upon her and B.M. at the hands of Hanse and other adults he invited to the home. Social workers also testified to statements made by K.M. The evidence, taken in the light most favorable to the State, reveals the following.
Hanse perpetrated multiple acts of sexual abuse on K.M. He also allowed K.M.'s grandfather, and at least two other persons named "Scott" and "Rocky," to touch K.M. in a sexual manner. In addition, Hanse and Scott caused B.M. to be touched in a sexual manner. Rocky and Scott, who were friends of Kobel and Hanse and in the home frequently, were two of the individuals Kobel and Hanse had been cautioned to keep out of the home and away from the children.
In detailing the abuse, K.M. used the word "puss" to describe her genital area. K.M. explained she had learned the word from Kobel one day when Kobel and Hanse told her "we're going to make sex," which Kobel explained as using your hands to "pull your puss apart." K.M. could recall the abuse occurring "when [she] was four years old." The abuse occurred "[e]very single day," and B.M. was "[a]lways" present. Hanse would abuse K.M. when Kobel left the home to go to the laundromat. He also abused K.M. when Kobel was in the home. K.M. recalled there were times Kobel would use the computer and watch Hanse abuse K.M. According to K.M., Kobel and Hanse argued about the abuse Hanse was perpetrating on K.M. and Kobel asked Hanse to stop the abuse on at least five occasions.
Kobel moved to dismiss the charges, citing to section 802.3's requirement that the trial information be filed within three years of the alleged commission of the crimes. She also moved for a judgment of acquittal, asserting the evidence was not sufficient to support a finding of guilt on either charge. The court denied both motions, and the matter was submitted to the jury, which returned a guilty verdict on each count. Kobel filed a motion for a new trial and a motion in arrest of judgment, which were both overruled. Kobel was sentenced to an indeterminate term of incarceration not to exceed fifty years for the multiple acts of child endangerment conviction and an indeterminate term of incarceration not to exceed two years on the child endangerment conviction, to be served concurrently.
Kobel appeals. She renews her contentions that there is insufficient evidence to support either conviction and both charges should have been dismissed pursuant to section 802.3.
II. Scope and Standards of Review.
Our review is for the correction of errors at law. State v.Booth, 670 N.W.2d 209, 211 (Iowa 2003) (statutory interpretation); State v. Turner, 630 N.W.2d 601, 610
(Iowa 2001) (substantial evidence). The jury's verdicts will be upheld if supported by substantial evidence. Turner,630 N.W.2d at 610. Evidence is substantial when it is sufficient to convince a rational trier of fact, beyond a reasonable doubt, of the defendant's guilt. Id. In assessing the sufficiency of the evidence, we view the totality of the record in the light most favorable to the State, drawing any and all legitimate inferences that can be reasonably deduced from the evidence. State v. Williams, 574 N.W.2d 293, 296 (Iowa 1998).
III. Discussion.
Kobel asserts the charges in this matter should have been dismissed pursuant to section 802.3, which provides, in relevant part, that "an indictment or information for a felony or aggravated or serious misdemeanor shall be found within three years after its commission." She points out that K.M. testified generally to acts committed and events occurring when she was four years old, but did not provide any specific dates on which the acts and events were alleged to have occurred. She asserts that because K.M. was born in June 1996 her testimony necessarily encompassed part of June, July, and the beginning of August 2000, all of which occurred more than three years prior to the August 8, 2003 filing of the trial information. Essentially, Kobel asserts the charges must be dismissed because the State has not established the necessary acts occurred within the limitations period, and thus she could have been convicted based on acts that occurred outside of the limitations period.
The State asserts, and the district court found, that child endangerment is a continuing offense and thus the limitations period did not begin to run until commission of the last act, in this case April 2, 2001, the date the social workers removed K.M. and B.M. from the home. See Iowa Code § 802.7
("When an offense is based on a series of acts committed at different times, the period of limitation . . . shall commence upon the commission of the last of such acts."). We need not determine whether the district court was correct in its conclusion, because we conclude the record contains substantial evidence that the charged offenses occurred within the statutory period.
Pursuant to the controlling statutes in this case, Kobel was guilty of multiple acts of child endangerment if, by three or more acts during the relevant period, she knowingly acted in a manner that created a substantial risk to K.M.'s physical, mental, or emotional health or safety and one or more of the acts resulted in a serious injury to K.M. Kobel was guilty of child endangerment if, during the relevant period, she knowingly acted in a manner that created a substantial risk to B.M.'s physical, mental, or emotional health or safety. See
Iowa Code §§ 726.6, .6A.[3] The requirement of three separate acts under the multiple acts alternative of child endangerment "should be established with enough precision to enable a jury to be satisfied beyond a reasonable doubt of a time and place where each of the three acts occurred."State v. Hickman, 576 N.W.2d 364, 368 (Iowa 1998). "However, this rule does not mean that evidence of the precise time and place of each incident or act is required, but merely means the three or more acts must be separated by time and place so that each incident is separate and distinct."State v. Yeo, 659 N.W.2d 544, 550 (Iowa 2003).
The record substantially supports a finding that Kobel knew Hanse was abusing K.M. K.M. asserted during her testimony and through statements made to social workers that Kobel would watch Hanse abusing her and even helped explain to K.M. the child's expected role during the abuse. K.M.'s testimony also substantially demonstrates that Hanse's abuse of K.M. occurred often and repeatedly during the statutory period and that B.M. was present for most if not all of the abuse. Despite this fact, Kobel continued to leave both children in the care of Hanse, a man who not only abused K.M. but allowed sexual offenders into the home.[4] These facts are sufficient to demonstrate Kobel knowingly acted in a manner that created a substantial risk to K.M.'s and B.M.'s physical, mental, or emotional health or safety, and that she did so within the statutory period.
In regard to the multiple acts charge involving K.M., it is reasonable to infer from the record that Kobel left the children alone in Hanse's care on at least three separate occasions within the statutory period. The record also substantially supports the conclusion that these acts led to K.M. suffering serious injury, as there can be little doubt K.M.'s physical injuries and PTSD were the result of Hanse's abuse. We accordingly conclude Kobel's convictions are supported by substantial evidence.
AFFIRMED.
[1] K.M. disclosed to social workers that Hanse had included a dog in the sexual activity to which she and B.M. had been exposed.
[2] The trial information charged Hanse with one count of sexual abuse in the second degree and one count of multiple acts of child endangerment for acts allegedly committed against K.M., and one count of child endangerment for an act allegedly committed against B.M. Hanse was convicted and sentenced on all three counts. He appealed and his convictions were upheld by this court. See State v. Hanse, No. 04-0943 (Iowa Ct.App. June 29, 2005).
[3] The other elements as charged in this case — that during the relevant period Kobel was a parent, guardian, or person having custody of K.M. and B.M., who were under the age of fourteen years — are not in dispute. Id.
[4] Contrary to Kobel's assertion, her requests that Hanse stop the abuse do not somehow vitiate her decision to leave the children alone in the care of a sexual perpetrator.