**IN THE COURT OF APPEALS OF IOWA**

No. 14-1377
Filed November 25, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**CARTER WILLIAM SHEPARD,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Wapello County, Lucy J. Gamon,

Judge.


        Carter Shepard appeals from convictions for felon in possession of a

firearm and second-degree burglary.  **AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Melinda J. Nye, Assistant

Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney

General, for appellee.


        Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**DANILSON, Chief Judge.**

Carter Shepard appeals from convictions for felon in possession of a firearm, in violation of Iowa Code section 724.26(1) (2013), and second-degree burglary, in violation of Iowa Code sections 713.1 and 713.4. He contends there was insufficient evidence he ever possessed a firearm. Viewing the evidence in the light most favorable to upholding the verdict, there is substantial evidence from which a jury could find Shepard possessed a firearm during the course of the burglary. We therefore affirm.

**I. Background Facts and Proceedings.**

On the afternoon of January 2, 2013, the Van Zante family traveled to Oskaloosa to help make funeral arrangements for a family member. They locked the doors and shut off the lights in their rural Wapello County home when they left.

At about 3:30 p.m., a neighbor on a walk in this rural area saw a silver Toyota car she did not recognize driving down the gravel road toward the Van Zantes' home. About half an hour later, the neighbor saw the same silver Toyota car traveling away from the Van Zantes' home with two men in the car. The neighbor did not recognize the men in the car.

When the Van Zantes returned home at about 7 p.m., all the lights were on inside their home, the door was smashed in, and the kitchen cupboards were open. They called 911. The house had been ransacked with drawers dumped out and mattresses flipped over. Property was missing from both upstairs and downstairs. A fireproof safe containing documents and a bag holding a camcorder were gone from under a desk in the living room. Gift cards and cash

were missing from the top of a six-foot tall dresser in the master bedroom. Jewelry, a MacBook laptop computer, a checkbook, some DeWalt power tools, a gun cleaning kit, a pair of boots, and a bible were missing. Seth Van Zante checked the garage and found the doors of the family mini-van were open, and it looked as if someone had been going through the van. Seth kept two long firearms on a shelf in the basement—an older bolt-action .22 rifle and a 12-gauge shotgun that had been handed down from his grandfather. Also kept in the basement were shells for the shotgun, .22 rounds for the rifle, and red-tipped .243 rounds for a high-powered rifle Seth kept in his pickup. The two guns and the ammunition from the basement were also missing.

At 1:30 a.m. the following morning (January 3), Jefferson County Deputy Sheriff Josh Terrance noticed a silver Toyota Camry parked outside a house in Libertyville. Deputy Terrance was not aware of the Van Zante burglary that had occurred the previous day in a neighboring county. However, he was interested in the car because its owner, Alexandria Bibby, had reported items stolen from it while it was parked outside the home a few weeks earlier. At the end of his shift, Deputy Terrance told Deputy Aaron Hopper to keep an eye on the vehicle.

A short time later, Deputy Terrance was called back to work because Deputy Hopper was chasing the silver Toyota Camry. Trooper Michael Tefler and Wapello County Deputy Sheriff Jeremy McDowell also assisted in the chase that reached speeds up to 120 miles per hour. Stop sticks were deployed to deflate the silver Toyota's tires, but the car continued with flat tires at speeds up to eighty miles per hour in a thirty-five-mile-per-hour zone. The vehicle finally came to a stop. Deputy Terrance arrived after the high speed chase had

concluded and confirmed the car was the same silver Toyota he had seen at 210 North Main earlier. He identified the passenger in the vehicle as Alexandria Bibby. Carter Shepard was identified as the driver of the Camry and was taken into custody. Deputies performed an inventory search before the car was towed. In the trunk, they found boxes of Winchester 12-gauge shotgun shells, a Remington .22 rifle, and red-tipped .243 ammunition.

At 7:50 a.m. on January 3, Deputy Don Phillips was dispatched to a gravel road outside Batavia, Iowa, in Jefferson County after a mail carrier found the Van Zantes' safe lying open on its side on a field driveway. The lock appeared to have been shot by a shotgun. The contents of the safe were strewn about, and a spent shotgun shell was recovered about twenty to twenty-five feet from the safe. The shotgun shell "looked similar" to the shotgun shells taken from the Van Zante house. The safe contained paperwork bearing the Van Zantes' names.

At about 11 p.m. on January 3, police executed a search warrant looking for stolen property at the Libertyville home. The residence is owned by Brenda Cook, a relative of Alexandria Bibby. Four people were in the residence at the time the search warrant was executed: Joseph Bibby and Amber Ladouceur were in the back northeast bedroom, and Mike Bibby and Haily Fountain were in an "adjoining room." Those four people were arrested for possession of stolen property from another burglary that occurred in Libertyville. In the residence, police found property belonging to the Van Zantes in the living room: a DeWalt impact driver, DeWalt light, and DeWalt bits, a gun cleaning kit in a camouflage case, and a Canon camcorder. They also found the Van Zantes' checkbook and laptop in a northwest bedroom. The northwest bedroom appeared to be used for

storage and not as a bedroom. Finally, police collected some .22 rounds and some red-tipped larger rifle ammunition rounds. The two long guns missing from the Van Zantes' home were not found.

Several days after the burglary, one of the Van Zante children spotted a shoeprint in the dust on the television. The TV was bolted to an entertainment center in the same room as the desk from which items were stolen. The Van Zantes reported the find to the sheriff. Investigators photographed the shoeprint, which was later determined to have been left by Shepard's shoe.

At trial, Seth Van Zante identified the ammunition investigators seized from the house in Libertyville. He used the price tag on the .22 caliber package to identify them as the ammunition his grandfather had purchased for the rifle. He also was able to recognize the tag and packaging for the red-tipped .243 ammunition that he purchased months earlier at a Scheel's sporting goods store because of the date on the tag. The 12-gauge shotgun shells matched the color, length, brand, markings, and projectile size of Seth's ammunition. He noted that it appeared like one of the recovered 12-gauge boxes had been crushed by the seat in his truck. Finally, the spent 12-gauge shell found near the safe was the same size, color, and brand as Van Zante's ammunition.

**II. Scope and Standard of Review.**

We review challenges to the sufficiency of the evidence for correction of errors at law. *State v. Thomas,* 847 N.W.2d 438, 442 (Iowa 2014).

> In reviewing challenges to the sufficiency of evidence supporting a guilty verdict, courts consider all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence. [W]e will uphold a verdict if substantial record evidence supports it. We will

consider all the evidence presented, not just the inculpatory evidence. Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt. Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury [is] free to reject certain evidence, and credit other evidence.

*Id.* at 442 (citations and internal quotation marks omitted).

## III. Discussion.

"A person commits burglary in the second degree . . . [if] [w]hile perpetrating a burglary in or upon an occupied structure in which no persons are present, the person has possession of . . . a dangerous weapon . . . ." Iowa Code § 713.5(1)(a). This statute does not require that the burglars arm themselves in advance of the burglary—it also covers "the incidental acquisition of a weapon during the perpetration of a burglary." *State v. Oetken*, 613 N.W.2d 679, 684–85 (Iowa 2000) (finding the defendant committed second-degree burglary when he and his accomplice stole firearms during residential burglaries). Clearly, burglars who arm themselves even during the burglary have raised the risk of harm to others who may be in the vicinity.

Shepard was also charged with violating section 724.26(1), which provides: "A person who is convicted of a felony in a state or federal court . . . and who knowingly has under the person's dominion and control or possession, receives, or transports or causes to be transported a firearm or offensive weapon is guilty of a class 'D' felony." The statute "requires only knowing dominion and control, possession, or receipt or transportation of a firearm." *State v. Olsen,* 848 N.W.2d 363, 373 (Iowa 2014).

"[T]hose who aid and abet in the commission of a public offense 'shall be charged, tried and punished as principals.'"  *State v. Hearn*, 797 N.W.2d 577, 580 (Iowa 2011) (quoting Iowa Code § 703.1).  Aiding and abetting "may be inferred from circumstantial evidence including presence, companionship and conduct before and after the offense is committed."  *Fryer v. State*, 325 N.W.2d 400, 406 (Iowa 1982).

Shepard does not dispute his presence at the burgled house (his footprint is on the television), or that he was driving the silver Toyota the following day attempting to evade police and in which ammunition stolen from the Van Zantes' house was found, or that the same vehicle was seen on the day of the burglary in the area of the Van Zantes' residence with two men in it.  He urges this court to remand for entry of judgment of conviction for third-degree burglary only.

The two issues on appeal relate to whether there was sufficient evidence Shepard possessed a firearm during the burglary of the Van Zantes' residence.

> Possession can be actual or constructive and sole or joint.
> The word "possession" includes actual as well as constructive possession, and also sole as well as joint possession.
> A person who has direct physical control of something on or around [his][her] person is in actual possession of it.
> A person who is not in actual possession, but who has knowledge of the presence of something and has the authority or right to maintain control of it either alone or together with someone else, is in constructive possession of it.
> If one person alone has possession of something, possession is sole.  If two or more persons share possession, possession is joint.

*State v. Maghee*, 573 N.W.2d 1, 10 (Iowa 1997) (citation and quotation marks omitted); *see also State v. Turner*, 630 N.W.2d 601, 609 (Iowa 2001) ("We have long held that 'dominion and control' may be shown by constructive, as well as

actual, possession. *See State v. Reeves,* 209 N.W.2d 18, 22 (Iowa 1973) (addressing possession of illegal substances). Constructive possession exists when, although the contraband is not on one's person, he or she controls the contraband or has the right to control it. *See id.*"). Iowa courts have also recognized an inference of possession "'when the contraband is found in a *place* which is *immediately and exclusively* accessible to the accused and subject to his [joint or sole] dominion and control.'"[1] *Turner*, 630 N.W.2d at 610 (quoting *Reeves,* 209 N.W.2d at 22).

Considering these principles, and viewing the evidence in the light most favorable to the State, the evidence supports an inference that Shepard was either driving or a passenger in the Toyota vehicle as they left the Van Zantes' carrying off the stolen property—including the two long guns. We conclude the jury could reasonably find Shepard had actual or constructive possession of the firearms taken from the Van Zante residence or aided and abetted someone who did have such possession. The jury was not required to search for reasonable doubt on the many assumptions laid before them.[2] We therefore affirm.

**AFFIRMED.**

---

[1] The *Turner* court emphasized that this inference "focuses on the *place* where the drugs are found as contrasted to the *premises* in which they are found." 630 N.W.2d at 610.

[2] Shepard contends there is reasonable doubt because the co-conspirator could have been the thief who took the guns. But Shepard's assertions would require the jury to assume Shepard was not the thief, was not the driver to or from the Van Zante residence, had no knowledge the co-conspirator intended to steal the guns, did not otherwise assist his co-conspirator in the theft of the guns, and did not have constructive possession of the guns in the vehicle. Because Shepard was driving the vehicle the next day with some of the shells in the trunk, and the theft of a so many items suggested a two-man operation, the jury could rely upon circumstantial evidence to find they had no reasonable doubt of Shepard's possession of a firearm.