# IN THE COURT OF APPEALS OF IOWA

No. 15-0437
Filed May 11, 2016

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**TIANO NISHAN TRICE,**
      Defendant-Appellant.
_____

      Appeal from the Iowa District Court for Scott County, Christine Dalton, District Associate Judge.


      Tiano Trice appeals the denial of his motion to suppress.  **AFFIRMED.**



      John J. Wolfe of Wolfe Law Office, Clinton, for appellant.

      Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant Attorney General, for appellee.



      Considered by Tabor, P.J., and Bower and McDonald, JJ.

**BOWER, Judge.**

Tiano Trice appeals the denial of his motion to suppress, claiming the police officer's search violated his rights under the Iowa and United States Constitutions because his consent to the search was not voluntary and the scope of the detention exceeded the officer's reason for stopping the vehicle. We affirm the district court's ruling.

## I.    BACKGROUND FACTS AND PROCEEDINGS

We adopt the district court's statement of the factual background:

> This case involves a pretextual stop on August 6, 2014. A NETS [(Neighbors Energized to Succeed)] officer in an unmarked squad [car] observed suspicious activity in a high drug trafficking building in downtown Davenport. He watched as the car parked far from the entrance, the passenger got out went into the building and returned to the car within two minutes. The car left the area, followed by the unmarked squad [car] it travelled for about two miles. The officer wanted to see where the car would go next. He noted a brake light did not work and the car did not make a complete stop at an intersection so he called a marked squad from the NETS unit to stop the car for the traffic violations. The officers made pretenses for the traffic stop, had the officer not observed the activity at the high crime building, he would not have followed and certainly would not radioed to have the car stopped. But the fact remains that the officer's testimony and [Trice]'s Ex A establish that a brake light was not working properly.
>
> The car was stopped at 10:04:28. It proceeded as a routine traffic stop at first but quickly diverted to the suspicion of drug activity. A drug dog was brought to the scene. The dog is viewable in the video at 10:18. [Trice] was asked out of the car and asked for consent to search his person. He immediately consented. The search of his pockets yielded the rocks of crack cocaine at 10:20. Less than twenty minutes after the traffic stop was initiated. His rights were read to him about one minute after the rocks were discovered. He denied knowledge of the rocks and said he was visiting his aunt Wilma at the building.
>
> There was no lengthy detention of the vehicle prior to the discovery of the rocks. The traffic violation was discussed, [and the vehicle's] occupants identified. Permission was granted by the driver for a search of his vehicle; necessitating the removal of the passengers from the car. Almost immediately after getting out of

the car, [Trice] consented to the search of his person. No coercive or intimidating behavior or language by the officer was observed on the DVD.

On August 27, Trice was charged with possession of a controlled substance (crack-cocaine), second offense, in violation of Iowa Code section 124.401(5) (2013). Trice pled not guilty and waived speedy trial. Trice filed a motion to suppress claiming the "pretextual" nature of the stop violated his rights under the Iowa Constitution and the expansive scope of the stop violated his rights under both the Iowa and the United States Constitutions. The district court denied the motion to suppress.

A bench trial was held on February 6, 2015, and the court found Trice guilty of the charged offense. Trice was sentenced to 240 days of incarceration, which was suspended, and was placed on probation. Trice now appeals.

## II. SCOPE AND STANDARD OF REVIEW

Trice claims the district court should have granted his motion to suppress under both the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution. Therefore, our review is de novo. *State v. Pals*, 805 N.W.2d 767, 771 (Iowa 2011). This review requires "an independent evaluation of the totality of the circumstances as shown by the entire record." *State v. Turner*, 630 N.W.2d 601, 606 (Iowa 2001) (internal quotation marks omitted). The court gives "deference to the factual findings of the district court due to its opportunity to evaluate the credibility of the witnesses, but [is] not bound by such findings." *State v. Lane*, 726 N.W.2d 371, 377 (Iowa 2007).

### III. MERITS

#### A. Consent to Search

Trice claims the search of his person violated his right against unreasonable search and seizure as his consent was not voluntary. This argument differs from the one raised in his motion to suppress, which challenged the validity of the stop due to its "pretextual" nature. The voluntary nature of Trice's consent was not raised in his motion to suppress or ruled upon by the district court, nor was Trice's consent discussed at the suppression hearing or bench trial. Therefore, we find Trice has failed to preserve error on this claim. *See State v. Rains*, 574 N.W.2d 904, 914 (Iowa 1998) (finding, on an appeal from the denial of a motion to suppress, an issue raised on appeal—but not raised in the motion to suppress or at trial—not preserved for appellate review).

#### B. Scope of Detention

Trice also claims the traffic stop violated his constitutional rights as the scope of the detention exceeded the officer's reason for stopping the vehicle. Trice relies on the United State Supreme Court case *Rodriguez v. United States*, 135 S. Ct. 1609, 1612–13 (2015), which involved the stop of a vehicle for a traffic violation and the search of the vehicle with the use of a drug dog. The occupants of the vehicle declined the officer's request to search their vehicle. *Rodriquez*, 135 S. Ct. at 1613. After performing a records check on both of the vehicle's occupants, the officer detained the occupants for seven or eight minutes to allow another officer to arrive. *Id.* The officer then walked the drug dog around the vehicle and subsequently located a "large bag of methamphetamine" in the vehicle. *Id.* The Supreme Court found the search was improper, reasoning, "An

officer, in other words, may conduct certain unrelated checks during an otherwise lawful traffic stop. . . . [The officer] may not do so in a way that prolongs the stop, absent the reasonable suspicion [of criminal activity] ordinarily demanded to justify detaining an individual." *Id.* at 1615.

Here, Officer Jordan Sander observed Trice and the other occupants at an apartment complex located in "a high crime, high drug, [and] high prostitution area." At the complex, Trice exited the vehicle and entered the complex for approximately two minutes. The officer followed the vehicle and noticed the left brake light was not working and the driver failed to come to a complete stop at a stop sign.

Two other officers, John Fury and Mathew Lovelady, pulled the vehicle over, at approximately 10:04 P.M., and also noticed the nonworking brake light. Fury informed the driver, Evan Henderson, of the traffic violations and requested identification from him and the other occupants (including Trice). Henderson could not locate the proof-of-insurance card; while Henderson searched for the card, Fury returned to the squad car to perform a records check. Fury testified he was familiar with Trice and knew he had been involved in incidents involving weapons. Officer Fury radioed for another unit to assist. Officer Danny Antle eventually responded to the scene with a police dog.

At approximately 10:14, Fury returned to speak with Henderson who had yet to locate the insurance card. Fury asked Henderson for permission to search the vehicle. Henderson initially stated the vehicle was his mother's and, after speaking with her, he gave consent for the search. Henderson exited the vehicle at approximately 10:16 and Fury performed a pat-down search for weapons.

Fury asked Henderson where they had been earlier in the evening. Henderson stated he and the other occupants had only been to the liquor store. Fury pointed out he knew they had been at the apartment complex and Henderson became upset. Fury asked Henderson to stand near the police car and Fury went to question the other occupants of the vehicle.

At approximately 10:17, Fury asked Trice to exit the vehicle and for permission to perform a pat-down search for any weapons. Fury found "several small rock like items" in Trice's pants pocket. Trice denied the rocks were crack-cocaine. Fury handcuffed Trice at approximately 10:18 and placed him in the squad car. After being *Mirandized*, Trice claimed he and the other occupants stopped at the apartment complex to get money from his aunt for liquor. He again denied knowing there was crack cocaine in his pocket.

"When a peace officer observes a traffic offense, however minor, the officer has probable cause to stop the driver of the vehicle. A traffic violation therefore also establishes reasonable suspicion." *State v. Harrison*, 846 N.W.2d 362, 365 (Iowa 2014) (citations omitted). "If, upon reasonable investigation surrounding the stop, the officer has a valid suspicion of other wrongdoing not the purpose of the stop, he can broaden the scope of the detention." *State v. Bergmann*, 633 N.W.2d 328, 335 (Iowa 2001). If an individual's "responses or actions raise suspicions unrelated to the traffic offense," the officer may inquire further to address those suspicions. *State v. Aderholdt*, 545 N.W.2d 559, 564 (Iowa 1996).

Upon our de novo review, we find the officer had a "valid suspicion of other wrongdoing . . . to broaden the scope of the detention." *Bergmann*, 633

N.W.2d at 335. Fury knew the vehicle and its occupants had been in a "high crime" and "high drug" area, he knew Henderson was lying about their previous whereabouts and he knew about Trice's past criminal activities. Given these facts, we find it permissible for the officer to expand the scope of his investigation. In contrast to *Rodriquez*, Henderson and Trice readily gave permission to be searched and facts other than a drug dog sniff supported the potential for illegal drugs to be present in the vehicle. Additionally, the duration of the stop before the drugs were found on Trice was not unreasonably long. Approximately twelve minutes elapsed between the stop and the subsequent search of Trice. Most of this delay can be attributed to Henderson being unable to locate his insurance information. *Cf. In re Pardee*, 872 N.W.2d 384, 397 (Iowa 2015) (finding a traffic stop lasting twenty-five minutes violated *Rodriguez* and the Fourth Amendment; a reasonable length for the "traffic-related mission" of a stop is "no more than ten minutes"). The scope of the officer's detention did not violate Trice's constitutional rights under the Iowa or the United States Constitutions, and we affirm the district court's denial of Trice's motion to suppress.

**AFFIRMED.**