# IN THE COURT OF APPEALS OF IOWA

No. 17-0577
Filed March 7, 2018


**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**NATHANIEL SCOTT AKERS,**
        Defendant-Appellant.
_____


        Appeal from the Iowa District Court for Linn County, Nicholas Scott, District

Associate Judge.


        A defendant appeals his conviction for possession of marijuana, second

offense. **REVERSED AND REMANDED.**


        Mark C. Smith, State Appellate Defender, and Mary K. Conroy, Assistant

Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Kelli A. Huser, Assistant Attorney

General, for appellee.


        Considered by Tabor, P.J., McDonald, J., and Carr, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**TABOR, Presiding Judge.**

Nathaniel Akers appeals his conviction for possession of marijuana, second offense. He argues the district court should have suppressed the marijuana because the police officer did not have probable cause to stop his car. After carefully reviewing the video-recording of the traffic stop, we agree the officer did not have probable cause to believe Akers was violating the rear-lighting statute at the time the officer signaled him to stop. Accordingly, we reverse the suppression ruling.

Cedar Rapids police officer Nathan Baughan was part of a "selective enforcement project" assigned to "monitor traffic flow" on the southeast side of the city around 10:45 p.m. when he saw a green 1973 Buick LeSabre drive south at the 100 block of Fifteenth Street, the same direction the marked squad car was facing. Officer Baughan testified neither the Buick's driver nor the passenger was wearing a safety belt. The officer also testified that as he followed the Buick, he noticed "it had a taillight out." The officer further testified that when the Buick stopped at the stop sign at Fifteenth Street and Second Avenue he could see the driver's side brake light "was out as well."

The officer caught up with the Buick at the intersection of Fifteenth Street and Seventh Avenue and activated his lights and sirens, signaling the driver to stop. According to the officer, the Buick travelled about two-and-a-half blocks before pulling over into "a proper parking spot." As the driver parked the car, he also honked his horn. The officer testified that the driver, Akers, and his passenger "then exited the vehicle and started towards the address where it later turned out that the driver actually lived." But the video from the officer's dashboard camera

does not show Akers moving away; rather it shows Akers walking toward the back of his Buick to meet the officer where they appear to discuss the rear lamps.[1] Officer Baughan then ordered Akers back to the driver's seat and expressed his displeasure concerning Akers's decision to sound his horn.

Officer Baughan testified that when he "engaged the driver in conversation" he could "plainly" smell fresh marijuana coming from either Akers or the car. Officer Baughan also testified Akers "had marijuana on his person" and "actually turned that over to me" by pulling it from his pocket. But the minutes of testimony indicate the officer handcuffed Akers and took the marijuana from his pocket. The marijuana weighed approximately eight grams. Akers told Officer Baughan he had just purchased the marijuana and planned to smoke it.

Officer Baughan testified Akers asked why he was stopped, and Officer Baughan "informed him both his taillight and his brake light and his seatbelt." Officer Baughan recalled Akers saying he didn't think he needed to wear his seatbelt because "his car was a 1973." The officer testified he "corrected" Akers, saying every vehicle manufactured after 1970 must have a shoulder and lap belt. Defense counsel cross-examined the officer about the source of his belief concerning the safety belt guidelines and directed the officer to Iowa Code section 321.445(1) (2016). The officer acknowledged on cross-examination he was not able to determine if the Buick was equipped with a shoulder harness until he "actually did the inspection of the vehicle."

---

[1] The audio on the exhibit is spotty as the officer's microphone picks up only bits and pieces of the conversation.

At the suppression hearing, defense counsel submitted a video of the traffic stop. Defense counsel argued:

> Upon review of that video, I believe that it's clear that there were no lights out on this vehicle. I will leave that for the Court to review the video or make that determination factually, but I don't believe the video evidence supports the testimony of Officer Baughan in regards to lights being out on this particular vehicle.

As for the seatbelt issue, counsel argued the officer was operating under a mistaken understanding of the law.

In its suppression ruling, the district court wrote: "While there was much emphasis placed on the seatbelts in the vehicle the court does not find it necessary to reach that dispute." Instead, the court rested its decision on the lighting issue. The court reviewed the video and found "one segment of the defendant's passenger taillight was not illuminated. *See* Exhibit A at 22:50:18.[2] This corroborates the officer's testimony he observed the taillight was not illuminated on the vehicle." The court ruled the officer had probable cause to stop Akers's vehicle based on a violation of Iowa Code section 321.387.[3]

After a stipulated bench trial, the district court found Akers guilty of possession of marijuana, second offense. He appeals that conviction by challenging the suppression ruling.

---

[2] The time on the video-recording identified in the suppression ruling was after the Buick had pulled over to the curb.

[3] This section states:

> Every motor vehicle . . . shall be equipped with a lighted rear lamp or lamps, exhibiting a red light plainly visible from a distance of five hundred feet to the rear. All lamps and lighting equipment originally manufactured on a motor vehicle shall be kept in working condition or shall be replaced with equivalent equipment.

Iowa Code § 321.387.

We review constitutional claims de novo, making an "independent evaluation of the totality of the circumstances as shown by the entire record." *State v. Tague*, 676 N.W.2d 197, 201 (Iowa 2004) (quoting *State v. Turner*, 630 N.W.2d 601, 606 (Iowa 2001)). We give deference to the district court's credibility findings but are not bound by them. *Id.* When it comes to viewing a video exhibit, we are "equally as capable as the trial court", and when an officer's statements are contradicted by the video, "we give them little weight in our de novo review of the evidence." *See State v. Binette*, 33 S.W.3d 215, 219 (Tenn. 2000).

Both the federal and state constitutions protect against unreasonable searches and seizures. *See* U.S. Const. amend. IV; Iowa Const. art. I, § 8.[4] Generally, an officer's decision to stop a motorist is reasonable if the officer has probable cause to believe the motorist violated a traffic law. *State v. Pals*, 805 N.W.2d 767, 773 (Iowa 2011). "Probable cause exists if the totality of the circumstances as viewed by a reasonable and prudent person would lead that person to believe that a crime has been or is being committed and that the arrestee committed or is committing it." *State v. Bumpus*, 459 N.W.2d 619, 624 (Iowa 1990). The State bears the "burden to prove by a preponderance of the evidence that the officer had probable cause to" make the stop. *Tague*, 676 N.W.2d at 201. Even a minor traffic or equipment violation may give an officer reason for a stop. *See State v. Hoskins,* 711 N.W.2d 720, 726 (Iowa 2006).

---

[4] Iowa's appellate courts may "construe a provision of our state constitution differently than its federal counterpart, though the two provisions may contain nearly identical language and have the same general scope, import, and purpose." *See State v. White*, 887 N.W.2d 172, 175–76 (Iowa 2016). But we need only reach the Fourth Amendment to decide this appeal. *See id.*

Akers argues the stop was improper because any problem with his rear lamps could not be detected until the officer had already stopped the vehicle. The defense agrees "the dash cam video from the officer's vehicle indicates that part of Akers's passenger taillight was not illuminated. (Ex. A 22:50:18)." But Akers emphasizes "the video also shows the taillight was illuminated when the vehicle was in motion; it only fails to illuminate when in reverse and parked. (Ex. A. 22:48:40-22:50:18)."

The State defends the traffic stop, explaining that while the seatbelt issue[5] originally prompted the officer to follow Akers, the officer also testified he saw a taillight not working when the Buick was southbound on Fifteenth Street and noted an inoperable brake light when the Buick stopped at a stop sign.

The video contradicts the officer's recollection. *See Scott v. Harris*, 550 U.S. 372, 378 n.5 (2007) (allowing the video to "speak for itself" in a civil case involving a vehicle chase). First, we find it telling that the defense—rather than the State—offered the video of the incident as an exhibit at the suppression hearing. Second, the officer testified he had not reviewed the dashboard camera video and did not fully recall the events as they unfolded, for example, he was uncertain whether there was another vehicle between his squad car and the Buick before the officer started his pursuit.

Third, our own scrutiny of the video does not square with the officer's testimony that he could see rear-lighting glitches before he signaled for Akers to stop. Officer Baughan testified a fixed dashboard camera cannot capture all the

---

[5] The video apparently was not activated when the officer initially saw the Buick drive by.

images that an officer can see with his naked eye: "The camera doesn't move, and I do." We have no doubt that is true, but the officer did not narrate any segment of the video where he could see a lighting issue, from directly behind the Buick, that would not be caught on the video. The officer agreed with defense counsel that the camera would be "the most accurate reflection" of "anything within its view."

Fourth, the video belied the officer's testimony concerning Akers's actions after the stop. The officer recalled Akers starting to walk toward his house after the stop and pulling the marijuana from his own pocket; the video does not show either of those events occurred.

Fifth, the district court—which also viewed the video—found corroboration of the officer's testimony about the lighting violations based *only* on a moment in the video that was *after* the Buick had pulled over to the curb and backed up into a parking spot, well after the officer initiated the traffic stop.

On appeal, the State does not point to any minute mark on the video exhibit to support the officer's testimony about the rear-lighting violations. Instead, the State argues even if Akers was correct in asserting the officer could not have seen an inoperable taillight or any other violation until Akers parked the Buick, "there was no seizure under the constitution until the defendant had exited his car and the officer directed him back to his car." The State relies on *California v. Hodari D.*, 499 U.S. 621, 626 (1991), for the proposition that a suspect is not seized until he yields to authority. The State contends even if the officer's pursuit was a show of authority, Akers did not yield to authority—and therefore was not seized—until he pulled over to the curb, left the vehicle, and returned to the driver's seat on the officer's order.

We decide whether an officer's actions amount to a "seizure" by examining the totality of the circumstances. *White*, 887 N.W.2d at 176. The activation of a patrol car's emergency lights is a show of authority and may "imply a police command to stop and remain." *Id*. When a person's deference to that show of authority "takes the form of passive acquiescence" then the test for determining if a seizure occurred is whether a reasonable person would have believed he was free to leave, as described in *United States v. Mendenhall,* 446 U.S. 544, 554 (1980), rather than the question of *submission* to authority as discussed in *Hodari D.*, 499 U.S. at 626. *See Brendlin v. California*, 551 U.S. 249, 255 (2007).

Contrary to the State's argument, Officer Baughan seized Akers when Akers heeded the officer's lights and sirens and pulled over to the curb. *See State v. Tyler*, 830 N.W.2d 288, 292 (Iowa 2013) ("A traffic stop is unquestionably a seizure under the Fourth Amendment."). Ackers passively acquiesced in Officer Baughan's show of authority by bringing his Buick to a stop. The malfunction in one of the Buick's six rear lamps, first visible when Akers placed the car in reverse to finish parking, could not serve as an after-the-fact justification for the traffic stop. Any probable cause to believe Akers had been driving the Buick in violation of section 321.387 had to exist before the car was stopped. *See id*. at 293 (explaining "purpose of a probable cause stop is to seize someone who has already committed a crime").

Because the officer did not have probable cause to stop Akers's vehicle, all evidence flowing from the stop is inadmissible. We reverse the district court's

denial of the motion to suppress and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**